**In Re the Marriage of Mary Mae O'BRIEN, Petitioner, Appellant,**

v.

**Jerome P. O'BRIEN, Respondent.**

**No. C8–82–851.**

Supreme Court of Minnesota.

Jan. 27, 1984.

*(PEER), Inc. v. Minnesota Environmental Quality Council,* 266 N.W.2d 858, 872–73 (Minn.1978), but failed to do so.

Jack S. Jaycox, Bloomington, for appellant.

James N. Hennessy and Herman J. Ratelle, Minneapolis, for respondent.

SIMONETT, Justice.

In this marriage dissolution appeal, the appellant-wife challenges the trial court's division of property and the provisions for maintenance, support, and insurance. We affirm, except with respect to the life insurance provision which we reverse and remand.

Appellant Mary Mae O'Brien, age 49, petitioned for a dissolution of her 30-year marriage to respondent-husband Jerome P. O'Brien, age 51. Three of the parties' five children are emancipated; of the remaining two, one is a college student who lives with her father when not in school and whose tuition is paid by him; and the other, Melissa, born in 1968, is severely afflicted with cerebral palsy. Melissa will never be able to live alone and has limited employment prospects. By agreement of the parties, Melissa's custody was awarded to her mother.

The O'Briens have a closely held business corporation in Golden Valley, named O'Brien Ornamental Iron, Inc., which they started in 1959. In the early years, Mrs. O'Brien assisted with the bookkeeping, but thereafter devoted the majority of her time to raising the children. Like her husband, Mrs. O'Brien is a high school graduate.

The trial court divided the property as follows:

| PETITIONER | | RESPONDENT | |
|---|---|---|---|
| Homestead—Valued $170,000 less 9,400 mortgage | $160,600 | Nonhomestead real property (2520 Nevada Ave., encumbered) | $135,000 |
| Nonhomestead real property (Snook property, unencumbered) | 90,000 | (Lake cabin) | 11,000 |

| PETITIONER | | | RESPONDENT | |
|---|---|---|---|---|
| Personal Property: | | | Personal Property: | |
| Automobile | 3,850 | | Corporate stock— | |
| Household | 2,621 | | (O'Brien Ornamental Iron, | |
| IRA | 900 | | Inc.) | 175,000 |
| | | | Life insurance, cash values | 14,226 |
| | | | IRA | 6,925 |
| | | | Ltd. partnership | 5,000 |
| | | | Automobile | 3,100 |
| | | | Boat and snowmobile | 2,800 |
| | | | Personal savings | 830 |
| | | | | 353,881 |
| | | | Note payable to corporation | –9,300 |
| | $257,971 | | | $344,581 |

To compensate for the $86,610 difference in Mr. O'Brien's favor, the trial court ordered him to pay Mrs. O'Brien $43,275 in two installments within a year.

The district court ordered Mr. O'Brien to pay child support for Melissa of $700 a month, subject to review when Melissa is 18 years old. In addition, Mr. O'Brien was required to furnish Melissa with major medical and hospital insurance, although he was not required to pay medical expenses in excess of the insurance coverage. The trial court also awarded Mrs. O'Brien spousal maintenance of $300 a month, "subject to further review and assessment under the circumstances." These awards were premised, in part, on the finding that the husband earns an annual salary of $60,-000 from the corporation, of which $3,000 a month is net take-home pay. The corporation, however, apparently was losing money in the current fiscal year. As owner of the 2520 Nevada building which houses the corporation, Mr. O'Brien is also entitled to a monthly rental payment of $1,750. It appears that only one rent payment had been made in the 6 months prior to trial, however, and that payment was applied to real estate taxes.

1. First, the appellant-wife challenges the level of spousal maintenance on three grounds: that the trial court did not include rental income in the husband's income, that the maintenance terminates at the husband's death and is unsecured by life insurance, and that the court did not recognize the property awarded to the wife is illiquid. In considering the seven factors governing spousal maintenance awards under Minn.Stat. § 518.552 (1982), the trial court is awarded wide discretion and this court's standard of review is accordingly narrow. We will not reverse unless the trial court abused that discretion. *Smoot v. Smoot*, 329 N.W.2d 829, 831 (Minn.1983), *citing Erlandson v. Erlandson*, 318 N.W.2d 36, 38 (Minn.1982).

Here, rental income was properly excluded in determining maintenance. The valuation of the asset, in this case the 2520 Nevada property, already reflects a capitalization of the income stream which the property produces; it is for this reason, presumably, that rents, like dividends and interest, are not among the items listed as "income" in Minn.Stat. § 518.54, subd. 6 (1982). As to the argument that the liquidity of the assets should be reflected in their valuation, the record shows that this factor was considered. Each party presented testimony on the value of the principal assets and liquidity was part of that testimony. The trial court weighed this evidence in establishing the value of the assets, and this factual determination, like others, was within the trial court's discretion. "The trial court's decision [on valuation] is to be affirmed if it has an acceptable basis in fact and principle even though this court may have taken a different approach." *Castonguay v. Castonguay*, 306 N.W.2d

143, 147 (Minn.1981), *citing Bollenbach v. Bollenbach*, 285 Minn. 418, 175 N.W.2d 148 (1970).

■ Appellant further claims that the trial court erred in failing to secure her award of permanent maintenance with life insurance protection in the event Mr. O'Brien should predecease her. We find this issue troublesome. The trial court awarded permanent maintenance, citing and quoting from Minn.Stat. § 518.552, subd. 1 (1982). Presumably, the trial court was motivated by a recognition that Mrs. O'Brien's employment prospects are poor and unlikely to improve, given her age, education, vocational experience, and, most importantly, the time and care she will have to give Melissa. Although this situation will not improve, spousal maintenance, as provided in the dissolution decree, terminates at Mr. O'Brien's death. "[I]n the exceptional case, the reasons which justify granting permanent alimony * * * also justify the securing of that alimony." *Arundel v. Arundel*, 281 N.W.2d 663, 667 (Minn.1979). We think this is one of those exceptional instances where there should be some life insurance on the husband's life to afford the wife a measure of security for loss of maintenance in the event her husband should predecease her. Because the husband is responsible for maintenance, so should he bear the cost of insurance protection for that maintenance. We note that the trial court requires the husband to maintain his "present program of life insurance," but only until Melissa is 18, and further requires that all five children—including three to whom no support obligation is owed—shall be designated as primary beneficiaries. On remand, in providing insurance to protect against the loss of spousal maintenance, the trial court should consider the feasibility of using the present life insurance program for that purpose and to afford added protection for Melissa.

■ 2. Appellant claims that the trial court erred by assigning to her responsibility for Melissa's medical expenses not covered by insurance. The major medical insurance provided by Mr. O'Brien does not cover eyeglasses, 20% of the cost of Melissa's braces, or dental charges. The trial court refused to assign responsibility for these residual expenses to the father, so the mother must pay these expenses either from the $700-a-month child support or from some other source. We cannot say that the trial court abused its discretion; moreover, we note that the court retained jurisdiction over the child support payments.

■ 3. Next, appellant argues that because she received no income-producing property and cannot care for the homestead, valued at $160,600 net, she will be forced to sell it and will probably have to do so on contract for deed. This argument, like her others, attempts to circumvent the trial court's findings as to valuation, which we see no reason to disturb. Further, two witnesses testified that a willingness to sell on a contract for deed would increase the value of the property. The essence of appellant's argument is that the trial court abused its discretion in refusing to force her husband to do what she would prefer not to have to do, namely, sell the house. This contention, given the applicable standard of review, is insufficient to justify a reversal on this record. "The trial court is accorded broad discretion in dividing property in dissolution of a marriage, and its decision will not be overturned on appeal except for a clear abuse of discretion." *Bogen v. Bogen*, 261 N.W.2d 606 (Minn. 1977); *see Stevens v. Stevens*, 300 N.W.2d 1 (Minn.1980).

4. We conclude the trial court did not err in refusing to consider various tax consequences of the property division. The trial court left each party responsible for the tax consequences of the receipt of property by each. Although the trial court did not adjust the division to reflect tax liability, it did add, at the appellant's request, a finding of fact deeming the parties coowners of the marital property. This was all the tax relief appellant requested in her post-trial motion. She apparently hopes that this finding will preclude the Internal Revenue Service from arguing that the

property division constitutes a taxable event.

Appellant's claim on appeal is not entirely clear. She argues generally that the trial court should have considered tax consequences, and she suggests evidence on this point was erroneously excluded. The record, however, reveals no offer of proof on tax consequences. Even when tax consequences are "considered," the ultimate division of the assets, based on many factors in addition to taxes, remains within the trial court's discretion. More importantly, the law precludes any consideration where the court must speculate because the evidence is lacking or nonspecific. *See Johnson v. Johnson,* 277 N.W.2d 208 (Minn.1979); *Aaron v. Aaron,* 281 N.W.2d 150 (Minn.1979). Here, appellant would have the trial court speculate on both points of her argument. As to the tax consequences of transferring her appreciated stock in the Iron Company to her husband, appellant argues that the state legislature *might* fail in its efforts to circumvent *United States v. Davis,* 370 U.S. 65, 82 S.Ct. 1190, 8 L.Ed.2d 335 (1962), through amendment of Minn.Stat. §§ 518.54 and 518.58. As to the *possible* future sale of the homestead, she offers no evidence as to the tax consequences of the sale, assuming a sale takes place.

5. There is no merit to the remaining issues raised by appellant in her brief. We remand for amendment of the decree to provide insurance protection for the spousal maintenance but otherwise affirm.

Affirmed in part, reversed in part, and remanded.