**In re the Marriage of James R. PEKAREK, petitioner, Appellant,**

v.

**Judith N. PEKAREK, Respondent.**

**No. CX–84–1567.**

Court of Appeals of Minnesota.

Feb. 19, 1985.

Nancy E. Murphy, Jack S. Jaycox, Bloomington, for appellant.

Harold R. Wingerd, St. Paul, for respondent.

Heard, considered and decided by PARKER, P.J., and SEDGWICK and LESLIE, JJ.

## OPINION

PARKER, Judge.

James Pekarek appeals the dissolution judgment awarding Judith Pekarek maintenance, child support, and certain property distribution. We affirm in part, reverse in part, and remand in part.

## FACTS

Judith N. Pekarek (respondent) and James R. Pekarek (appellant) were married in 1966. They have four children, none of whom were emancipated at the time of their dissolution trial.

By the time of trial Judith had completed the course requirements for a master's degree in psychiatric nursing but needed to complete a thesis to earn her degree. At that time she was employed at Ramsey County Mental Health Center, earning $13 per hour. Judith testified that this job would end in November 1983.

James is a partner at the accounting firm of Peat, Marwick, Mitchell and Co., earning approximately $130,000 per year. In dispute is the value of certain tax shelter assets. The parties own two limited partnership interests in apartment buildings (Northwood and B & K College), which James states were purchased to create tax shelters for his income. The parties had an additional investment in a general partnership, the IDS Investment Partnership. They also owned an interest in the Thunderbird Properties limited partnership. Finally, they own an interest in the Omni Drilling Partnership.

## ISSUES

1. Did the trial court properly determine the values of the tax shelter assets,

James' pension plan, and the value of his unrealized receivable account (from Peat, Marwick, Mitchell and Co.)?

2. Did the trial court err in its award of spousal maintenance and child support?

## DISCUSSION

### I

James argues that the trial court erred in its valuation of partnership assets. In particular, he says the trial court erred by accepting Judith's expert's valuation of two tax shelter limited partnerships. He also claims the court erred by refusing to consider the tax ramifications of the valuation of three other partnerships.

A trial court has broad discretion in property settlements. *Lammi v. Lammi*, 348 N.W.2d 372 (Minn.Ct.App.1984) (citing *Bogen v. Bogen*, 261 N.W.2d 606 (Minn.1977)). An appellate court will not overturn the trial court's valuation of assets unless they are clearly erroneous.

The court accepted the testimony of Judith's expert in determining the value of the two tax shelter limited partnerships (apartment buildings). Judith's expert arrived at a value by taking the market value of each partnership, subtracting any encumbrances, and dividing into that figure the partnership interest. This basic market value approach is derived from the analysis in *Johnson v. Johnson*, 277 N.W.2d 208, 213 (Minn.1979).

Based on the *Johnson* analysis, Judith's expert calculated that the parties' interest in Northwood Apartments was worth $67,125 and that their interest in the B & K Apartments was worth $36,749. James' expert valued each of the two tax shelters relying on the following factors: (1) the market value of the property; (2) the underlying financing of the property; (3) its income (rents); (4) its operating statements; and (5) actual mortgage information. Based on this formula, James' expert calculated that the Northwood interest was

worth $19,400 and the B & K Apartment interest was worth $14,200.

■ We are convinced that adoption of the expert testimony of either party would lead to considerable misvaluation of the tax shelter assets. A tax shelter is a unique type of asset which does not lend itself to a simple market valuation. Since we regard tax shelters sui generis and because the state of the record here is inadequate, the *Johnson* valuation approach is inapplicable in this case.

The trial court followed the valuation process established by *Johnson*. The record, however, was such that the court had nothing upon which to base a proper valuation of the tax shelter assets. Since the goal of valuation of marital assets is to make possible an equitable distribution of those assets, a proper method must be determined to evaluate complex tax shelter limited partnership assets.

Therefore, we remand this case and direct the trial court to appoint a neutral expert who can develop a methodology for evaluating limited partnership tax shelter investments. Minn.R.Evid. 706. Such a method may include an estimate of the present value of the income stream produced by the investment during an appropriate time period.

■ When expert valuations of tax shelters are greatly disparate, or if there is difficulty in evaluating complex tax shelter assets, it is incumbent upon the court to appoint an expert well-versed in tax shelter valuation to give it a neutral viewpoint. This is an occasion upon which it was essential for the court to exercise its discretion to amplify the record; therefore, we remand this case for such valuation of all the parties' tax shelter assets.

■ James also argued that the trial court erred by not considering the tax consequences of valuing the three other partnerships—the Omni drilling partnership, the IDS Investment partnership, and the Thunderbird Properties limited partnership. We disagree. The trial court may not consider the tax consequences of a property

award when to do so would force the court to speculate. *O'Brien v. O'Brien*, 343 N.W.2d 850, 854 (Minn.1984). Here, James did not present enough credible evidence to evaluate properly the drilling partnership and the Thunderbird partnership. He certainly did not present enough information to allow the court reasonably to take into account the tax consequences of the valuation. This decision, however, does not preclude the trial court from considering tax consequences on remand once the neutral expert has evaluated these assets.

■ James also claims that the trial court erred in its estimate of the present value of his pension plan and the value of his unrealized receivable account from the accounting firm. The court was within its discretion to adopt the findings of Judith's expert, a credible expert and certified licensed underwriter (CLU). *See Lammi v. Lammi*, 348 N.W.2d 372 (Minn.Ct.App. 1984).

## II

■ James argues that the trial court erred in its award of $1,500 per month for three years in spousal support and in its award of $2,600 in child support for the four children. The standard of review on appeal from a trial court's determination of a maintenance award is whether the court abused the wide discretion accorded it. *Erlandson v. Erlandson*, 318 N.W.2d 36 (Minn.1982).

■ Judith was employed by Ramsey County Mental Health Center, but her position was temporary. The court found that Judith had been employed throughout the marriage but on a sporadic basis. Other than the Ramsey County position, she had no practical working experience in her field. It was reasonable for the court to award temporary maintenance.

■ The court awarded $2,600 in child support for the four minor children. The trial court found that James had a net spendable income of $10,833 per month. The child support guidelines of Minn.Stat. § 518.551 (Supp.1983) indicate that support

for four children would be 39 percent of income at that level, or $4,225 per month. The trial court may deviate downward from the support guidelines only if it makes "express findings of fact as to the reason for the lower order." *See* Minn.Stat. § 518.17, subd. 5 (Supp.1983). There having been no notice of review filed by Judith, the trial court's failure to make findings justifying deviation from the guidelines need not further concern us in the disposition of this case.

### DECISION

We remand to the trial court and direct that it appoint a neutral expert to aid it in its tax shelter valuation. We also remand for findings on the issue of child support. We affirm on all other issues.

Affirmed in part, reversed in part, and remanded in part.

SEDGWICK, J., dissents.

SEDGWICK, Judge (dissenting).

I respectfully dissent from that portion of the majority opinion which remands for the appointment of an expert to value the tax shelters.

Both parties to this lawsuit presented their experts to testify as to the market value of two tax shelters, Northwood Apartments and B & K Apartments. The trial court heard the testimony, disregarded the opinion of James' expert and adopted the value testimony of Judith's expert. The majority cannot find that the evidence presented does not sustain the trial judge's findings because it does. Instead, based on some independent knowledge, not of record, this matter is being reversed because "we are convinced that adoption of the expert testimony of either party would lead to considerable misvaluation of the tax shelter assets."

Assigning a specific value to an asset is a finding of fact; disputes as to asset valuation are to be addressed to the trier of fact, and conflicts are to be resolved in that court. * * * Such findings of fact, when made without a jury, shall not be set aside unless clearly erroneous on the record as a whole. Rule 52.01, Rules of Civil Procedure * * *.

*Hertz v. Hertz*, 304 Minn. 144, 145, 229 N.W.2d 42, 44 (Minn.1975) (citations omitted).

It is true that Rule 706 of the Minnesota Rules of Evidence permits court appointed experts on the court's own motion, but only after entering an order to show cause why expert witnesses should not be appointed. The rule also appears to encourage input from the parties.

In fairness to the parties and to their right to have some control of their litigation, use of this rule should be limited to litigation in progress, i.e., prior to entry of judgment.

We should not overturn the trial court's discretion absent a showing of a clear abuse of that discretion. *O'Brien v. O'Brien*, 343 N.W.2d 850 (Minn.1984). I would affirm the trial court.