In re the Marriage of Natalie
JOHNSON, Petitioner,
Appellant,

v.

Carl Peter JOHNSON, Respondent.

No. C9–85–95.

Court of Appeals of Minnesota.

Aug. 20, 1985.

Review Denied Oct. 24, 1985.

Jack S. Jaycox, Nancy E. Murphy, Jack S. Jaycox Law Offices, Ltd., Bloomington, for petitioner, appellant.

Robert J. Hajek, Katz, Lange, Davis & Manka, Ltd., Minneapolis, for respondent.

Heard, considered and decided by FORSBERG, P.J., and WOZNIAK and SEDGWICK, JJ.

## OPINION

FORSBERG, Judge.

This is an appeal from a supplemental judgment relating to maintenance and property issues in a bifurcated dissolution proceeding. This court affirmed the judgment on the custody and temporary support and maintenance issues. *Johnson v. Johnson,* 363 N.W.2d 355 (Minn.Ct.App. 1985). Appellant challenges the trial court's valuation of marital property, award of maintenance, and failure to divide non-marital property. We affirm.

## FACTS

Appellant Natalie and respondent Carl Peter Johnson were married on March 11, 1978, and have two children. Carl is a pilot for Northwest Airlines, earning approximately $10,000 gross income per month. Natalie was employed as a ticket agent at Northwest for thirteen years before the birth of her first child. She then quit to care for the child. Northwest has a no-re-hire policy preventing Natalie from resuming that employment.

Prior to the marriage, Carl had acquired 3 lots and an adjacent hayfield in Chisago County, and built a small house. He bought Lots 9 and 10, on which the homestead was later built, in 1969, and Lot 8 in 1974. The total purchase price was $16,-200. The hayfield was bought in 1976 for $8,000 in order to protect the area from possible development. It was not included in the valuation of the homestead.

Carl built a small house on the property, largely with his own labor. The materials cost him $20,548. This work was completed before the parties were married. Carl testified that he had taken out a loan for construction before the marriage. The trial court estimated a pre-marital loan of $15,000 and deducted this amount from the non-marital interest.

Following the marriage, the house was greatly expanded. Again, Carl did much of the labor. He took out construction loans totaling $117,000. These were consolidated into a mortgage loan of $135,000 in March, 1983. Natalie did not sign the mortgage note, but did sign the deed at the insistence of the bank. At the time of trial, the mortgage balance was $134,400. The trial court found Carl's non-marital interest to be the principal amount of the loan, $135,-000, plus the net pre-marital contribution of land and materials less the pre-marital loan, or $21,798, for a total of $156,798.

Natalie presented the appraisal report of Eldon Robey, a local appraiser who valued the house at $225,000 using comparable sales figures and $250,000 following the cost approach. An appraisal of a local realtor retained earlier by Natalie, how-

ever, estimated the value at $178,000. Robey admitted that there had been no sales of property in the immediate area exceeding $150,000. Carl testified that he had no idea of the value of the house, and no intention of selling it.

The trial court found a value of $178,000 based on the market value approach and the realtor's appraisal. The total marital interest was found to be the difference between this market value and the non-marital interest, or $21,202.

Carl owned interests in various limited partnerships, tax shelters purchased mainly before the marriage, but entirely, he testified, from funds in a Dean Witter account which he had before the marriage. There was no valuation of these interests, which were all found to be non-marital property.

Carl also owned real estate, bought 5 years before the marriage but paid off 9 months after the marriage, which the court found to be non-marital property. The parties stipulated that the marital interest in Carl's pension would be determined according to the formula in *Taylor v. Taylor*, 329 N.W.2d 795 (Minn.1983), with payment deferred until receipt of the pension benefits.

The trial court, in its earlier order, directed payment to Natalie for permanent spousal maintenance and child support of $800 per month, to increase to $1000 per month. Although custody was given to Carl, Natalie has visitation for 4 days per week, including the weekends. At trial here, the court added a maintenance provision that Carl pay Natalie's costs of education or retraining for 2 years. Natalie, who was 37 at the time of trial and had no post-secondary education, testified to her desire to attend college and enter the field of education. Carl's expert witness, an employment and rehabilitation counselor, testified that although she has college potential, her employment prospects in education are questionable.

## ISSUES

1. Did the trial court abuse its discretion in its valuation of the marital interest in the homestead?

2. Did the trial court err in finding certain tax shelter investments to be non-marital assets?

3. Was the court's failure to find unfair hardship and to divide non-marital property an abuse of discretion?

4. Was the award of tuition costs as maintenance for only two years an abuse of discretion?

## ANALYSIS

### I.

It is undisputed that all of the land, and the original home, were non-marital contributions by Carl. The trial court included an adjacent lot and excluded the 8-acre hayfield in calculating the marital interest in the homestead. The court added the purchase prices of the three parcels and the costs of building the original home and the addition. The latter was essentially the cost of materials, since Carl testified that he did much of the work himself. Natalie testified that she did contribute considerable time to the construction of the new addition. The court counted the costs of the new addition as non-marital.

"Non-marital property" is defined in part as property which is "the increase in value of property which is [acquired before the marriage]." Minn.Stat. § 518.54, subd. 5(c) (1984). The supreme court has developed the following formula for apportioning marital and non-marital interests in property:

> The present value of a nonmarital asset used in the acquisition of marital property is the proportion the net equity or contribution at the time of acquisition bore to the value of the property at the time of purchase multiplied by the value of the property at the time of separation. The remainder of equity increase is characterized as marital property and is distributed according to Minn.Stat. § 518.58 (1980).

*Brown v. Brown*, 316 N.W.2d 552, 553 (Minn.1982).

■ The supreme court has held that sums expended for improvements are attributable to the parties' joint efforts and constitute marital property. *Faus v. Faus*, 319 N.W.2d 408, 412 (Minn.1982). The parties here borrowed the money to pay the costs of materials and outside labor. Since Carl alone was obligated on the mortgage note to repay this sum, he satisfied the burden of proving that this addition was non-marital property. *See Van de Loo v. Van de Loo*, 346 N.W.2d 173, 177 (Minn.Ct. App.1984) (burden of proving purpose of personal injury recovery for injury occurring during marriage was on party seeking non-marital classification). It was appropriate to describe this added value as non-marital. Since only $600 of the mortgage principal had been paid off, it did not appreciably increase the parties' equity in the homestead.

■ The trial court has broad discretion in property settlements and will not be reversed on its valuation of assets unless clearly erroneous. *Lammi v. Lammi*, 348 N.W.2d 372, 374 (Minn.Ct.App.1984). The court's acceptance of the lower valuation and rejection of both the Robey appraisal figures was not clearly erroneous.

## II.

Prior to the marriage, Carl had acquired 500 shares of Northwest Airlines stock and 200 shares of St. Jude Medical, which split twice during the marriage to total 800 shares. With these stocks he opened an account at Dean Witter in 1982. Although the account was opened during the marriage, it was considered non-marital since all the assets in it were acquired before the marriage or were increases in value of pre-marital acquisitions. Minn.Stat. § 518.-54, subd. 5(b), (c) (1984). From this account, Carl purchased a number of limited partnership interests as tax shelters. Natalie contends that these assets were marital property, and that the trial court erred in failing to require a valuation of these assets. *See, Pekarek v. Pekarek*, 362 N.W.2d 394, 397 (Minn.Ct.App.1985) (tax shelter investments may require appointment of expert for valuation).

■ The evidence supported the trial court's conclusion that since all the assets in the account were pre-marital, the interests purchased from it were non-marital. Natalie's argument that these were marital interests because they were purchased as tax shelters, and because an IRA for her was also paid for from these assets, is without merit. Since the tax shelter investments were non-marital property, it follows that a valuation of them was not required unless the court were to divide non-marital assets.

## III.

Natalie argues that the trial court erred in failing to find unfair hardship so as to award her some of the non-marital assets. This is within the discretion of the trial court. *Rutten v. Rutten*, 347 N.W.2d 47, 51 (Minn.1984).

The statute provides that the court may apportion non-marital property if it finds unfair hardship

> based on all relevant factors including the length of the marriage, any prior marriage of a party, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, needs, and opportunity for future acquisition of capital assets and income of each party.

Minn.Stat. § 518.58 (1984).

■ Given the relatively short duration of the marriage, Natalie's age and general employability, we do not find an abuse of discretion in failing to divide non-marital assets.

## IV.

The trial court in its earlier order directed payment of $800 per month to Natalie as child support and permanent spousal maintenance, to increase to $1000 per month, and $250 per month for apartment rent, pending the trial on the property issues. This court in *Johnson v. Johnson*, 363 N.W.2d 355, 358 (Minn.Ct.App.1985)

held that this order was interlocutory and did not review support and maintenance issues. Following the trial on property issues, the court continued the $1000 per month maintenance order indefinitely, and continued the $250 rental payment for two years. In addition, it directed payment of Natalie's educational costs for two years.

Natalie contends that the trial court erred in failing to clearly designate whether the payments ordered were for maintenance or support. *See* Minn.Stat. § 518.55, subd. 1 (1984). She also claims that the trial court failed to consider the factors relevant to maintenance awards. Minn. Stat. § 518.552 (1984). Finally, she argues that the evidence did not support the limitation of rehabilitative maintenance to a two-year period.

Since the trial court did not specify whether the earlier order was for maintenance or child support, and Carl is the custodial parent, the order is presumed to be for maintenance. Minn.Stat. § 518.55, subd. 1 (1984).

It is not shown that the trial court failed to consider the factors relevant to a maintenance award. The basic consideration in determining appropriate spousal maintenance is the financial need of the spouse claiming it and the ability to meet that need balanced against the financial condition of the spouse who is to provide it. *Krick v. Krick,* 349 N.W.2d 350, 352 (Minn. Ct.App.1984).

Given the short duration of the marriage and Natalie's employability, it was not a clear abuse of discretion, considering the permanent spousal maintenance earlier ordered, to limit the maintenance specifically for retraining to a two-year period.

## DECISION

The trial court properly valued the marital interest in the homestead. The court did not err in finding the tax-shelter investments to be non-marital property, or in failing to divide non-marital assets. There was no abuse of discretion in the maintenance award.

Affirmed.