**In re the Marriage of Avron S. ROSENBERG, Petitioner, Respondent,**

v.

**Geraldine E. ROSENBERG, Appellant.**

No. C7-85-841.

Court of Appeals of Minnesota.

Dec. 24, 1985.

Review Denied Feb. 19, 1986.

Gerald M. Singer, John P. Sheehy, Minneapolis, for respondent.

Kathleen M. Picotte-Newman, Bonnie R. Miller, Minneapolis, Marvin M. Mitchelson, Los Angeles, Cal., for appellant.

Heard, considered and decided by CRIPPEN, P.J., and PARKER and WOZNIAK, JJ.

## OPINION

CRIPPEN, Judge.

Avron Rosenberg petitioned the district court for a marriage dissolution. The court granted this relief and distributed the property of the parties. Geraldine Rosenberg moved for an amendment of the order, which the trial court granted. She appealed from the amended order. We affirm in part, reverse in part, and remand.

## FACTS

The parties were married for twenty-one years. Three children were born of the marriage and two are still minors: Susan, age 17, and Wendy, age 14. Prior to the marriage, respondent was a 35% shareholder in the egg and poultry business that his father started. After the parties married,

the family business became very profitable. In 1971, the business merged with Nathan's Produce to form Crystal Foods, Inc. Shortly after this merger, respondent's father Julius began making gifts of Crystal Foods stock to his family. Julius Rosenberg gave 24.23 shares to respondent and the same number of shares to appellant Geraldine Rosenberg.

In 1981, Julius Rosenberg sold the parties 46.81 shares of Crystal Foods stock. The terms of the sale provided that the parties would pay Julius $18,000 per year, which would pay only the interest on the sale. If Julius and his wife were to die, then the debt would be forgiven. The sale agreement provided further that the original sale price of $170,000 would be increased to $250,000 if Crystal Foods was sold within three years.

Crystal Foods was sold in 1983 (within three years of the stock transaction between Julius Rosenberg and the parties) to Northstar Universal, Inc., for $6,500,000. The net price paid for the interest of the parties totaled $1,680,077.85. Respondent received $1,535,921 for 261.59 shares and appellant received $144,156.17 for her 24.23 shares. The 261.59 shares included 190.55 which represented respondent's interest prior to the marriage, 24.23 he received as a gift from his father, and 46.81 purchased by the parties in 1981.

The parties also owned various business interests, numerous stocks and bonds, commercial paper, household goods, and cash.

The trial court found that the parties had marital assets worth $945,431, including $284,108 from proceeds of the stock sale, made up of $253,355 calculated by the trial court as the increase in value of respondent's nonmarital stock, and $30,773 calculated as the excess of proceeds for 46.81 purchased shares over the debt remaining on the purchase.

Because of appellant's numerous health problems and lack of skills and respondent's wealth of skills and income-producing power, the trial court awarded respondent 40% of the marital property ($378,172.50). He was also awarded all of his nonmarital investments ($1,478,404.00, representing mostly the proceeds of sale of his stock). Appellant was awarded 60% of the marital property ($567,258.50) and all of her nonmarital property ($144,156.17). Thus, appellant's total award was $711,414.67 and respondent's total award was $1,856,576.50.

The trial court placed Susan in the custody of her father and Wendy in the custody of her mother. The court also provided that respondent should pay appellant $700 per month in spousal maintenance and $900 a month for child support. The child support award will be increased to $1,500 per month once Susan, who is in respondent's custody, reaches the age of majority.

Appellant incurred $35,000 in attorney's fees, and the trial court awarded her $10,000 to defray that expense.

Appellant contends that the distribution of property was inequitable. She argues also that the award of maintenance, child support, and attorney's fees was erroneous.

## ISSUES

1. Did the trial court make an erroneous distribution of the proceeds from the sale of Crystal Foods?

2. Did appellant's hardship dictate that the court should have awarded her a portion of respondent's nonmarital property?

3. Did the trial court erroneously value the respondent's interest in a profit sharing plan as of December 31, 1983, instead of the date of trial?

4. Did the trial court erroneously award to respondent the debt and stock from the sale to the parties by Julius Rosenberg?

5. Did the trial court abuse its discretion when making awards of maintenance, child support, and attorney's fees?

## ANALYSIS

1. The trial court's findings of fact will not be set aside unless they are clearly erroneous. Minn.R.Civ.P. 52.01 (1985). Accordingly, we will not set aside findings

of fact unless left with a definite and firm conviction that a mistake has been made. *Minnesota Public Interest Research Group v. White Bear Rod and Gun Club*, 257 N.W.2d 762, 782–83 (Minn.1977). The trial court's characterization of property as marital or nonmarital is a determination of law, *Van de Loo v. Van de Loo*, 346 N.W.2d 173, 175 (Minn.Ct.App.1984), but we must defer to trial court findings on underlying facts, such as dates of acquisition, value when acquired, etc.

Under Minnesota law, nonmarital property is any property which

> (a) is acquired as a gift, bequest, devise or inheritance made by a third party to one but not to the other spouse;
>
> (b) is acquired before the marriage * * *.

Minn.Stat. § 518.54, subd. 5(a), (b) (1984). Furthermore, if one party to the marriage owned property prior to the marriage and that property appreciates in value during the marriage, that party is awarded a proportional share of the appreciated value as nonmarital property. *Schmitz v. Schmitz*, 309 N.W.2d 748, 750 (Minn.1981); Minn. Stat. § 518.54, subd. 5.

At the time of the marriage, respondent owned 35% of the family business. At the time of the sale of the business, the Rosenbergs' share equaled $1,680,077.85. Appellant owned 24.23 shares of the company, and the shares were characterized as nonmarital property because they were given to her as a gift. *See* Minn.Stat. § 518.54, subd. 5(a) (gifts to one spouse from a third party are nonmarital property). Respondent also owned 24.23 nonmarital shares because like appellant, respondent received these shares as a gift. Respondent also owns 190.55 shares, representing the interest in the company he held prior to his marriage. Since these shares were held prior to marriage, they are nonmarital. *See* Minn.Stat. § 518.54, subd. 5(b). The trial court determined that 25% of respon-

dent's nonmarital stock sale proceeds should be characterized as marital property, and the respondent conceded that characterization. The trial court determined the 25% to equal a net sum of $253,355.

Appellant argues that the trial court erroneously classified 75% of respondent's stock sale proceeds as nonmarital property. She disputes characterization of that part of respondent's stock investment as appreciation which is treated as nonmarital property under *Schmitz*. She challenges the significance of respondent's analysis, stated in his testimony, that the 75% portion of his investment is nonmarital because it is attributable to the efforts of other co-owners.

Respondent does not claim that any of his stock sale proceeds represent his initial investment independent of appreciation. Moreover, he concedes that 25% of the appreciation represents the fruit of marital effort and is marital property. In other words, he views his proceeds as the fruit of appreciation and acknowledges that 25% of the increase in value is not appreciation protected under *Schmitz*. Respondent says nothing to dispute a view of the 25% part of the investment as akin to income on nonmarital property, treated as marital property under *Pearson v. Pearson*, 363 N.W.2d 337, 339 (Minn.Ct.App.1985).

Appellant contends that the trial court should have gone further to conclude that all the appreciation of stock be viewed as the fruit of marital effort. Appellant contends that *Schmitz* does not control here and urges a concept that goes beyond the holding in *Pearson* on earnings from a nonmarital interest. The trial court rejected this argument[1], and we find no basis to reverse.

It is true, as appellant asserts, that property is presumed to be marital. Minn.Stat. § 518.54(5) (1984). Nevertheless, the rule

---

1. It is not wholly clear that the trial court acted on respondent's rationale on classification of the stock. The court's findings include a mistaken statement that only 25% of the sale proceeds represented appreciation, which was not respondent's assertion. However, by treating all of this increase in value as marital property, the court reached the result respondent suggested.

of *Schmitz* on appreciation has not been discarded by the supreme court and cannot be upset by this court. *Pearson* acknowledges the obvious distinction for earnings on an investment, but it does not deal with classification of appreciation to account for marital efforts. In fact, respondent's concession goes beyond what the law demanded of him, save as it may reflect an admission that the capital investment was to that extent (25%) nothing different than undistributed personal earnings.

Any declaration of a new concept of appreciated property must come from the legislature or the supreme court, not from us. We are convinced that the trial court reached a result consistent with controlling law when it distributed the stock sale proceeds as it did.

■ 2. Under Minnesota law, certain nonmarital property of one spouse may in some cases be awarded to the other spouse. *See* Minn.Stat. § 518.58. Section 518.58 states, in pertinent part:

> If the court finds that either spouse's resources or property, including his portion of the marital property as defined in section 518.54, subdivision 5 are so inadequate as to work an unfair hardship, considering all relevant circumstances, the court may, in addition to the marital property, apportion up to one-half of the property otherwise excluded under section 518.54, subdivision 5, clauses (a) to (d) to prevent the unfair hardship. If the court apportions property other than marital property, it shall make findings in support of the apportionment. The findings shall be based on all relevant factors including the length of the marriage, any prior marriage of a party, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, needs, and opportunity for future acquisition of capital assets and income of each party.

*Id.*

The trial judge stated that he was awarding appellant a greater share of the parties' marital property to prevent undue hardship.

An appellate court will treat with deference the property distribution of a trial court in a dissolution case. *Kreidler v. Kreidler*, 348 N.W.2d 780, 782 (Minn.Ct. App.1984). So long as the distribution has a "reasonable and acceptable basis in fact," it will be affirmed. *Id.* at 782–83. The trial judge noted the plight of appellant and accordingly awarded her a higher percentage of the marital property. Since the trial court specifically acted to prevent undue hardship, we cannot say as a matter of law that the court was required to award to appellant some of respondent's nonmarital property.

■ 3. When determining the value of pension or profit sharing plans, the proper date of valuation is the date of the parties' divorce decree. *See Larson v. Larson*, 370 N.W.2d 707, 708 (Minn.Ct.App. 1985) (any property acquired by the parties between the date of separation and the date of trial is marital property). In this case, the trial court determined that the value of respondent's profit sharing plan was $212,317, which was the value of the plan on December 31, 1983. At trial, Hillard Ward, who is vice president of Crystal Foods, testified that an employee's annual interest in his profit sharing plan vests only if the employee works for the entire year. Thus, at the time of trial, which was on September 4, 1984, respondent's vested interest in his profit sharing plan was in fact the value of the plan as of December 31, 1983. The plan had not increased in value since December 31, 1983, because any increase would not vest until the end of 1984. The trial court correctly determined that respondent's vested interest in his profit sharing plan was $212,317.

■ 4. The trial court, when distributing the marital property, gave to respondent the responsibility of paying the debt owed by the parties to Julius Rosenberg for the purchase of 46.81 shares of Crystal Foods stock. The court also awarded respondent the proceeds from the sale of the shares. The parties signed a promissory note for $250,000 for the purchase of the

stock. The $250,000 was then placed in an escrow account. The purchase agreement provides that the parties should pay only the interest on the principal amount owed and that the debt would be cancelled upon the death of Julius Rosenberg and his wife, Nessia. Thus, upon the death of Julius and Nessia Rosenberg, the amount in escrow will revert to the parties. The interest paid to Julius Rosenberg is just the interest generated by the escrow account.

Appellant argues that the trial court wrongfully deprived her of her interest in the 46.81 shares of stock. She says that the parties transacted the purchase strictly for tax purposes and that no one intended that Julius Rosenberg would receive the whole amount of the debt owed. She claims that upon the death of Julius and Nessia, respondent will receive the entire $250,000 presently in the escrow account.

We agree that the trial court should have considered the $250,000 held in escrow as marital property of the parties. This was a joint, marital transaction, providing that the parties will receive the amount held in escrow conditioned only upon payment of the interest generated to Julius and Nessia Rosenberg. The case must be remanded to the trial court for consideration of how the marital interest in escrowed funds should be divided.

5. The trial court may in its discretion order one spouse to pay maintenance to the other if the spouse seeking maintenance

(a) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs, especially during a period of training or education, and

(b) Is unable to adequately support himself after considering all relevant circumstances through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home.

Minn.Stat. § 518.552, subd. 1(a), (b). Section 518.552 also provides that in making a determination of maintenance, the court should consider all relevant factors, including:

(a) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;

(b) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment, and the probability, given the spouse's age and skills, of completing education or training and becoming fully self-supporting;

(c) The standard of living established during the marriage;

(d) The duration of the marriage and, in the case of a homemaker, the length of absence from employment and the extent to which any education, skills, or experience have become outmoded and earning capacity has become permanently diminished;

(e) The age, and the physical and emotional condition of the spouse seeking maintenance;

(f) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance; and

(g) The contribution of each party in the acquisition, preservation, depreciation, or appreciation in the amount or value of the marital property, as well as the contribution of a spouse as a homemaker.

*Id.* § 518.552, subd. 2(a)–(g).

The trial court concluded that considering appellant's poor health and her permanent inability to hold employment, she should be awarded $700 per month maintenance in addition to the marital property she received. That amount is so inadequate, appellant argues, as to constitute an abuse of discretion on the part of the trial court.

▇▇▇▇ An important consideration in determining whether a spouse should be

awarded maintenance is the financial need of that spouse and the ability to meet that need, balanced against the ability of the other spouse to provide maintenance. *Novick v. Novick,* 366 N.W.2d 330, 334 (Minn. Ct.App.1985). In addition, the court must consider the station in life that the spouse seeking maintenance came to enjoy during the marriage. *Bollenbach v. Bollenbach,* 285 Minn. 418, 427, 175 N.W.2d 148, 155 (1970). *See also* Minn.Stat. § 518.552, subd. 2(c) (standard of living is a factor to consider when determining whether maintenance should be awarded). We agree that a spouse in the position of appellant, who enjoyed an affluent lifestyle during her marriage, cannot now be forced to subsist at a survival level. Appellant argues that she will be unable to meet her expenses unless maintenance is increased by at least $2000 per month.

Respondent argues that appellant has sufficient income from her property holdings to more than sustain her. He says that she was given a large sum of cash which should have a minimum return of $40,000 per year. That, respondent argues, should be sufficient to sustain appellant at the lifestyle to which she has been accustomed.

Respondent also points out that he is no longer employed and should not be expected to pay out large sums for maintenance. Respondent lost his job as a result of the sale of Crystal Foods, and he signed a covenant not to compete that will preclude him from working in the same field for three years. Appellant argues that because respondent's diminished earning capacity was caused by his own conduct, the court should not consider diminished earning capacity when determining the amount of maintenance to award.

The Minnesota Supreme Court has considered this question and said that

> when an ex-husband voluntarily liquidates his business, a capital asset, and thereby diminishes his future earning capacity, we believe that it would be unjust to hold that he is automatically relieved of future alimony payments, even if it

ultimately becomes necessary to pay the ex-wife a portion of the proceeds from the sale.

*Sieber v. Sieber,* 258 N.W.2d 754, 757 n. 2 (Minn.1977). *Sieber* is, however, distinguishable from the case here. In this case, the parties to the marriage agreed together to sell their share of the family business. Thus, it was not strictly the husband's conduct that caused his diminished earning capacity.

We find that appellant has sufficient income, including the amount of maintenance awarded, and that the trial court did not abuse its discretion when it awarded only $700 per month in maintenance.

■ 6. Appellant argues that the trial court erred by not requiring respondent to buy life insurance on himself and make appellant the beneficiary. Appellant contends that when permanent maintenance is ordered, the court should also order the obligor to purchase insurance to provide security for the obligee.

In exceptional circumstances, the courts will provide that an award of spousal maintenance should be secured by requiring the obligor to purchase life insurance on himself. *O'Brien v. O'Brien,* 343 N.W.2d 850, 853 (Minn.1984). In *O'Brien,* the trial court awarded the wife $300 per month in permanent maintenance. *Id.* at 852. The trial court found that Mrs. O'Brien's employment prospects were poor considering her age and background. *Id.* at 853. It was clear that these conditions would not improve. Notwithstanding that fact, the trial court ordered that maintenance payments would cease if Mr. O'Brien predeceased Mrs. O'Brien. In such a situation, the supreme court said, insurance on the life of the obligor is warranted. *Id.*

There are no such exceptional circumstances in this case. Appellant has the benefit of a distribution of marital property that Mrs. O'Brien did not enjoy. Particularly, appellant appears to have income producing property sufficient to sustain her in the event that maintenance payments should cease.

■ 7. The trial court awarded appellant custody of Wendy, the couple's youngest daughter, and ordered respondent to pay $900 per month as child support. Respondent was awarded custody of Susan, the couple's middle daughter, and was ordered to pay appellant an additional $600 per month child support once Susan reaches majority. Appellant claims that the child support award falls below the amount mandated by the child support guidelines. Therefore, she argues, the trial court's award was erroneous.

If the trial court makes an award of child support, the court must determine the amount to be awarded based upon Minnesota's child support guidelines. Minn. Stat. § 518.551, subd. 5. The court may not award an amount lower than that mandated by the guidelines unless it makes findings of fact stating its reasons for departing from the guidelines. *Id.* § 518.551, subd. 5(e).

If both children had been placed in the custody of appellant, the guidelines would have required that respondent pay $1800 per month in child support. *See id.* § 518.-551, subd. 5 (an obligor who earns more than $6000 per month shall pay 30% of $6000 to support two children). Since only one child is in appellant's custody, the other being in respondent's custody, the trial court awarded half the amount of child support required by the guidelines.

The trial court did not make sufficient findings to justify its departure from the support guidelines. The mere awarding of split custody does not automatically justify a downward departure from the guidelines. *Berlin v. Berlin,* 360 N.W.2d 452, 454 (Minn.Ct.App.1985). However, the trial court's decision is supported by the record, having regard for evidence on the child's needs and the custodial parent's ability to provide for those needs. Appellant's income, supplemented by the $900 per month child support payments, adequately provides for appellant and the child in her custody.

■ 8. Although appellant incurred attorney's fees of $35,000 in this case, the trial court awarded her only $10,000 in attorney's fees. Appellant claims that was erroneous.

The trial court has broad discretion in the awarding of attorney's fees to one party or the other. *Kirby v. Kirby,* 348 N.W.2d 392, 394 (Minn.Ct.App.1984). *See also* Minn.Stat. § 518.14 (trial court may, after considering financial resources of both parties, order one party to help defray the legal expenses of the other). Appellant acknowledges that the awarding of attorney's fees "rests almost entirely in the discretion of the trial court."

Despite the broad discretion the trial court has to award attorney's fees, appellant argues that the trial court abused its discretion in this case by failing to award appellant all of her attorney's fees, or at least a much higher portion. Appellant claims that respondent has more assets than appellant and a much greater earning capacity. Therefore, appellant argues, appellant should have been awarded a higher amount of attorney's fees.

We cannot agree that appellant is entitled to a greater award for fees as a matter of law. The trial court has such broad discretion in the awarding of attorney's fees that a reviewing court will rarely reverse the trial court on that issue. The court ordered respondent to pay nearly one-third of appellant's attorney's fees. Appellant received a substantial award of property. The court did not abuse its discretion.

## DECISION

The trial court made a proper determination of the amount of the parties' nonmarital shares of the sale proceeds. The trial court took into account appellant's hardship and properly awarded her a greater share of the parties' marital property. The trial court made a proper valuation of respondent's pension plan, but erroneously awarded to respondent the entirety of an amount held in escrow. That amount is to be considered marital property, and the trial court must determine how it should be

distributed between the parties. The trial court did not make erroneous awards of maintenance, child support, and attorney's fees.

Affirmed in part, reversed in part, and remanded.