**In re the Marriage of Marguerite I. NARDINI, Appellant,**

v.

**Ralph V. NARDINI, Respondent.**

No. C1–85–1421.

Court of Appeals of Minnesota.

April 15, 1986.

Review Granted June 30, 1986.

Karl L. Cambronne, Cort C. Holton, Minneapolis, for appellant.

Robert J. Tansey, Jr., E. Anne McKinsey, Minneapolis, for respondent.

Heard, considered and decided by HUSPENI, P.J., and FOLEY and NIERENGARTEN, JJ.

## OPINION

FOLEY, Judge.

Marguerite Nardini appeals from a judgment and decree of dissolution entered on June 28, 1985. Marguerite challenges the

trial court's property division, claiming that the trial court (1) improperly valued Nardini Fire Equipment Company, one of the parties' three companies, and (2) erroneously characterized one-half of Nardini Fire Equipment Company as Ralph Nardini's nonmarital property. Marguerite also challenges her award of spousal maintenance, arguing that both the amount and the duration of the award constitute an abuse of discretion. Finally, Marguerite disputes the trial court's denial of her request for attorney's fees. We affirm.

## FACTS

Marguerite and Ralph Nardini were married on December 26, 1953. The marriage was dissolved and a judgment and decree entered on June 28, 1985. At the time the judgment was entered, Marguerite was 54 years old, and Ralph was 56. The parties have two children, both of whom are grown and living away from home.

For the duration of the marriage, Ralph worked in his business involving the selling and servicing of fire protection equipment in commercial and residential settings. Ralph first became involved in the fire protection equipment business in 1949, prior to the parties' marriage, when he purchased an interest in the proprietorship of Peter Dietsch. Ralph claims he purchased a 50% interest in Dietsch's proprietorship for $2,500. Marguerite testified that Ralph purchased a half interest in only a part of Dietsch's business, in the recharging section. At her pre-trial deposition, Marguerite admitted that she did not know what portion of Dietsch's business consisted of the recharging section. Subsequent to the parties' marriage, they purchased Dietsch's interest in the partnership for $12,500. In the late sixties, the parties renamed the business Nardini Fire Equipment Company.

The business has grown since Ralph's initial purchase in 1949. The parties incorporated a sister company in Fargo, North Dakota called Nardini Fire Equipment Company of North Dakota, which the parties stipulated has a value of $25,000. A third company, the Nardini Development Company, was also created, and the parties have stipulated that the value of this company is $165,924 after the subtraction of encumbrances. Prior to the dissolution, the parties jointly held all of the shares in these three companies, with Marguerite holding 40% of the stock and Ralph 60%.

Ralph is the president of Nardini Fire Equipment Company and its sister company in North Dakota. Ralph earns approximately $90,000 in gross income per year. In addition, he receives various perquisites, including a leased company car, an expense account, and a membership at North Oaks Country Club.

Marguerite's involvement with the companies was limited to bookkeeping work in the early years of the marriage. Primarily, she worked as a homemaker during the course of the parties' 31-year marriage. Marguerite is involved in numerous civic and charitable functions, and she is currently serving on the city council of Little Canada, a position she will have until December 31, 1986 and for which she receives $240 per month. Marguerite has a high school education.

Marguerite suffers from a chronic skin condition called psoriasis. Failure to take her weekly doses of medication results in cracked and bleeding skin. While the medication has unpleasant side effects, it has been fairly effective in controlling Marguerite's condition for the past two years. Ralph enjoys good health.

Prior to trial, the parties stipulated to the value and disposition of much of their property. Left for the trial court's consideration was the value of Nardini Fire Equipment Company, disposition of the parties' three closely held corporations, Marguerite's request for spousal maintenance, and Marguerite's request for an award of attorney's fees.

Both parties presented valuations of the Nardini Fire Equipment Company through the testimony of their experts. Marguerite's expert, Steven Thorp, testified that the value of the company was $725,213. Thorp based his valuation on a comparison

of comparable companies and acknowledged that he did not take into consideration Ralph's "key man" status in the company. Ralph's expert, John Hawthorne, testified that he performed a detailed analysis of comparable companies trading their stock publicly as well as Nardini Fire Equipment Company. Utilizing this approach and taking into account Ralph's key man status, Hawthorne valued the company at $350,000.

After trial, and at the trial court's request, both parties submitted proposed findings and conclusions. Without attaching a memorandum, the trial court adopted Ralph's proposed findings and conclusions in their entirety. The trial court found that Ralph acquired an interest in one-half of the predecessor company prior to the parties' marriage, thereby giving him a nonmarital interest in one-half of Nardini Fire Equipment Company. The court further found that the fair market value of the company was $350,000, and that a one-half interest discounted for lack of control was worth $135,135. Finding that Marguerite is an "able bodied woman capable of employment and training for employment," the trial court awarded her $1,200 per month for five years as spousal maintenance. The trial court also denied Marguerite's request for attorney's fees. Marguerite appeals.

## ISSUES

1. Was the trial court's valuation of Nardini Fire Equipment Company clearly erroneous?

2. Did the trial court err in its characterization of one-half of Nardini Fire Equipment Company as Ralph's nonmarital property?

3. Did the trial court abuse its discretion in refusing to award Marguerite permanent maintenance?

4. Did the trial court abuse its discretion in denying Marguerite's request for attorney's fees?

## ANALYSIS

1. Marguerite's first argument on appeal is that the trial court erred in valuing the Nardini Fire Equipment Company at $350,000. The Minnesota Supreme Court has held that a trial court's valuation of an asset is a finding of fact, which "shall not be set aside unless clearly erroneous on the record as a whole." *Hertz v. Hertz*, 304 Minn. 144, 145, 229 N.W.2d 42, 44 (1975). *See also Quade v. Quade*, 367 N.W.2d 87, 89 (Minn.Ct.App.1985), *pet. for rev. denied*, (Minn. July 11, 1985). Furthermore, "the market valuation determined by the trier of fact should be sustained if it falls within the limits of credible estimates made by competent witnesses even if it does not coincide with the estimate of any one of them." *Hertz*, 304 Minn. at 145, 229 N.W.2d at 44. This court will not set aside the trial court's valuation of an asset unless such a finding is "'manifestly and palpably contrary to the evidence as a whole.'" *March v. Crockarell*, 354 N.W.2d 42, 48 (Minn.Ct.App.1984), *pet. for rev. denied*, (Minn. Jan. 10, 1985) (quoting *Kucera v. Kucera*, 275 Minn. 252, 255, 146 N.W.2d 181, 183 (1966)).

Marguerite contends that the value of the company is much greater than the value assigned by the trial court. During trial, the parties' experts gave their valuations of $725,213 (Marguerite) and $350,000 (Ralph). In addition, several other values were discussed. Ralph's expert, John Hawthorne, testified that the net worth (assets less liabilities) of Nardini Fire Equipment Company was $565,000, adding that net worth is seldom equal to fair market value. Hawthorne also testified that the liquidation value of the company would be $391,456. Hawthorne explained, however, that liquidation of a company typically occurs after it has sustained losses and that in this case, the $391,456 liquidation value would fall if the company began to suffer losses. Moreover, Hawthorne stated the fair market value of a company may be less than its liquidation value because "[t]he potential seller * * * may not want to go through the trials and tribulations of liquidation." According to Marguerite, the

trial court erred by assigning a value of $350,000 when an outright sale of the assets would bring in $391,456 and the company's net worth is $565,000. Marguerite requests that this court reverse, remand and direct the trial court to establish a reasonable value.

Ralph responds that substantial deference must be given to the trial court's valuation. Furthermore, according to Ralph, Marguerite's $725,213 valuation was premised on the notion that a potential buyer, one seeking a high-risk investment with a promising return and who did not want to assume Ralph's duties, would pay that sum to receive the company's average yearly profits of $61,000. Ralph argues that unless his compensation were included in net earnings, however, an average yearly profit of $61,000 would not be an attractive sum in light of the $700,000 plus investment required to buy the company. In short, Ralph asserts that since Marguerite failed to exclude his salary from the calculation, the valuation is flawed.

■ Both experts testified in detail as to their methodology in valuing Nardini Fire Equipment Company. Both experts gave thoughtful presentations. While the court's valuation may not be based upon comprehensive findings, it is supported by clear testimonial evidence. *See Durand v. Durand,* 367 N.W.2d 621, 624 (Minn.Ct. App.1985). The trial court adopted Ralph's valuation of the company. While it would have been helpful to have the trial court's reasoning and explanation as to why it chose the lower value, "it is within the trial court's discretion to choose one appraisal over another, and by taking one of two proffered [valuations], the trial court cannot be said to have erred." *Kostelnik v. Kostelnik,* 367 N.W.2d 665, 669 (Minn.Ct. App.1985), *pet. for rev. denied,* (Minn. July 26, 1985). The trial court's method of valuation must be affirmed if it has an acceptable basis in fact and principle, even if this court might have taken another approach. *Id.* Accordingly, we affirm the trial court's valuation.

2. With respect to the trial court's property division, Marguerite argues that the trial court erred in determining that one-half of Nardini Fire Equipment Company was Ralph's nonmarital property, thereby excluding her from sharing in one-half of the value of a major asset. The trial court specifically found that Ralph purchased a one-half interest in the predecessor business prior to the parties' marriage and, therefore, that he has a nonmarital interest in one-half of the present company. The trial court valued one-half of the company at $135,135 and awarded Ralph one-half interest in the common stock of Nardini Fire Equipment Company.

Marguerite makes three arguments. First, because of the long period of marriage, she argues that she is entitled to an equal portion of the property accumulated by the parties. *See Miller v. Miller,* 352 N.W.2d 738, 742 (Minn.1984). Second, Marguerite argues that the trial court's findings are inadequate. She asserts the trial court simply signed Ralph's proposed findings without articulating its reasoning; thus, she has no assurance that the trial court considered her position. Third, Marguerite contends that since Ralph testified at trial that he did not know the value of his portion of the company at marriage, it is impossible to apply the formula from *Schmitz v. Schmitz,* 309 N.W.2d 748 (Minn. 1981), to determine the value of his nonmarital interest. Marguerite states in her brief that "[n]o calculation of the value of a nonmarital interest is possible given the testimony received at trial." In addition, she asserts that the increased value of the company must be conclusively presumed to be the result of substantial contributions from both parties. On this basis, Marguerite requests that this court determine that all of Nardini Fire Equipment Company is a marital asset.

Ralph emphasizes that Marguerite acknowledged at trial that he purchased an interest in the predecessor business prior to marriage. Consequently, since she admits that he clearly has a nonmarital interest, the dispute centers on the extent of his interest. While Ralph was unable to doc-

ument his pre-marriage purchase, he testified that the purchase consisted of a 50% interest in the business. He argues the trial court was entitled to give greater credence to his testimony, especially in light of Marguerite's inability to recall the matter at her deposition while remembering something about his pre-marital interest at trial. *See* Minn.R.Civ.P. 52.01.

Ralph further argues that *Schmitz* is inapplicable in this case because it pertains to apportioning marital and nonmarital interests in jointly-held assets. Here, he asserts that since he purchased a clearly defined interest before marriage, apportionment is unnecessary and he is entitled to that interest in addition to the increase in its value.

■ Nonmarital property is defined, in part, as property acquired before marriage and the increase in value of property acquired before marriage. Minn.Stat. § 518.-54, subd. 5(b)(c) (1984). The party seeking to establish the nonmarital character of an asset has the burden of proof. *VandeLoo v. VandeLoo*, 346 N.W.2d 173, 177 (Minn. Ct.App.1984). The trial court found that Ralph was entitled to one-half of Nardini Fire Equipment Company as his nonmarital property because he acquired that interest four years prior to marriage.

■ With respect to property settlements, the trial court has broad discretion and will be reversed only for a clear abuse of discretion. *Bogen v. Bogen*, 261 N.W.2d 606, 609 (Minn.1977). Because Ralph purchased a clearly defined one-half interest prior to marriage, the trial court correctly determined he is entitled to that interest plus its increase in value. *See* Minn.Stat. 518.54, subd. 5 (1984). We must give due regard to the trial court's opportunity to judge the credibility of witnesses. *See* Minn.R.Civ.P. 52.01. Moreover, the *Schmitz* formula, which Marguerite asserts is applicable in this case but which cannot be applied because of insufficient information, pertains to appreciation of investments in the homestead after marriage and therefore does not apply. *See Schmitz*, 309 N.W.2d at 748.

3. The trial court awarded Marguerite spousal maintenance in the amount of $1,200 per month for five years based on the finding that while she was primarily a homemaker during the marriage, she is very involved in the community and is capable of training and employment. In the area of maintenance, the trial court is accorded wide discretion. *O'Brien v. O'Brien*, 343 N.W.2d 850, 852 (Minn.1984). Due to this court's narrow standard of review, a trial court will not be reversed unless the trial court abused its discretion. *Id.*

Maintenance shall be awarded if the spouse seeking it lacks sufficient property to provide for reasonable needs and is unable to adequately support himself or herself. Minn.Stat. § 518.552, subd. 1 (1984). The statutory factors to be utilized in determining whether an award of maintenance is appropriate include the resources of each party, the duration of the marriage, contributions of each spouse to the marriage, time the recipient needs for education leading to appropriate employment, and the couple's previous standard of living. *See id.* subd. 2. These factors require courts to balance the supporting spouse's financial needs and capacity against the other spouse's needs and capacity. *Sefkow v. Sefkow*, 372 N.W.2d 37, 48 (Minn.Ct.App.1985).

Marguerite disputes the trial court's award, claiming that "[t]he Nardini marriage presents a classic case for an award of maintenance" given that she is 55 years old, has been married for 31 years, has only a high school education, has a skin disease, and has no specific employment skills. Marguerite adds that the trial court made no specific findings related to the statutory factors and therefore meaningful review by this court is impossible. *See* Minn.Stat. § 518.552. Marguerite requests a remand to the trial court, directing it to award permanent maintenance because the trial court's award is too little and for too short a time in light of her $4,741 monthly expenses.

Ralph argues that this court should not substitute its own judgment and re-evaluate the trial court's determination. He asserts that permanent maintenance is only for exceptional circumstances. *See McClelland v. McClelland,* 359 N.W.2d 7, 10 (Minn.1984). It is Ralph's position that Marguerite received a substantial property distribution, thus decreasing her need for spousal maintenance. *See Deliduka v. Deliduka,* 347 N.W.2d 52, 57 (Minn.Ct.App. 1984), *pet. for rev. denied,* (Minn. July 26, 1984). In addition, Ralph contends that Marguerite's claimed monthly expenses are inflated, as she testified at trial that the requested amounts reflected a lifestyle she would like to have rather than the one she now enjoys. He also asserts that Marguerite is an active person who can attain self-sufficiency and that he is nearing retirement and should not be burdened with permanent payments.

A recent amendment to Minn.Stat. § 518.552 provides that "[w]here there is some uncertainty as to the necessity of a permanent award, the court *shall* order a permanent award leaving its order open for later modification." 1985 Minn. Laws ch. 266, § 2 (emphasis added). Ralph correctly notes that this statute was not enacted at the time of trial and should not be applied in this case because to do so would give it retroactive effect. *See* Minn.Stat. § 645.21 (1984).

■ The trial court did not abuse its discretion in awarding Marguerite temporary maintenance. We note, however, that by making an award of temporary maintenance, the trial court retained jurisdiction over this matter. *Cf. Berger v. Berger,* 308 Minn. 426, 428, 242 N.W.2d 836, 837 (1976) (if a trial court neither awards alimony nor retains jurisdiction to award alimony at a future time, it loses jurisdiction to make such an award following the dissolution of marriage). The trial court may, therefore, modify the present temporary award prior to its expiration. *See* Minn. Stat. § 518.64, subd. 1 (1984). Thus, Marguerite may renew her request for permanent maintenance in the future, sometime

before her present temporary award expires in July 1989. *See Wibbens v. Wibbens,* 379 N.W.2d 225 (Minn.Ct.App.1985). If in the future Marguerite moves for a modification of support, the trial court will be better able to determine whether an award of permanent maintenance is appropriate.

4. A trial court may award attorney's fees in a dissolution case. *See* Minn.Stat. § 518.14 (1984). Allowance of attorney's fees in such a case rests almost entirely within the discretion of the trial court. *Solon v. Solon,* 255 N.W.2d 395, 397 (Minn. 1977); *Deliduka v. Deliduka,* 347 N.W.2d 52, 57 (Minn.Ct.App.1984), *pet. for rev. denied,* (Minn. July 26, 1984). An award will not be disturbed absent a clear abuse of discretion. *Sefkow v. Sefkow,* 372 N.W.2d 37, 49 (Minn.Ct.App.1985).

■ Marguerite disputes the denial of her request for attorney's fees. She argues that Ralph earns a high salary and has many benefits, and consequently, after considering the financial resources of each party, she should receive an award of fees. Ralph counters there is no evidence suggesting that Marguerite was without funds to protect her interests, and therefore the trial court did not abuse its discretion. Based on the record, we cannot conclude that the trial court abused its discretion.

## DECISION

The trial court's valuation of Nardini Fire Equipment Company is affirmed. The trial court did not err in characterizing one-half of the company as Ralph's nonmarital property. The trial court did not abuse its discretion in awarding temporary maintenance and in denying Marguerite's request for attorney's fees.

Affirmed.