**In Re the Marriage of JoAnn E. POACH, Petitioner, Appellant,**

v.

**Donald A. POACH, Respondent.**

**No. C1-85-2357.**

Court of Appeals of Minnesota.

Sept. 2, 1986.

Nancy L. Ponto, St. Paul, for appellant.

Alan Dorfman, Dorfman & Dorfman, Ltd., Minneapolis, for respondent.

Heard, considered, and decided by RANDALL, P.J., and LANSING and HUSPENI, JJ.

## OPINION

RANDALL, Judge.

JoAnn Poach appeals from the judgment and decree of dissolution entered September 23, 1985. She claims the trial court erred by valuing respondent's non-marital share of his business on December 31, 1974, instead of on May 11, 1974, the date of the parties' marriage. She also claims the court erred in the amount and duration of rehabilitative maintenance, in its apportionment of attorney's fees, and in failing to order respondent to include appellant on his health insurance policy. We reverse and remand to recalculate the property settlement, but affirm on all other issues.

## FACTS

The parties were married May 11, 1974. At the time of the dissolution (September 23, 1985), appellant was fifty and respondent was fifty-seven years of age. Respondent has three adult children from his previous marriage. This is appellant's first marriage. Respondent is the owner of a dry cleaning business.

On September 4, 1971, he and his previous employers, the Woodhams, formed a partnership, Don's Leather Cleaning (DLC), in Rochester, Minnesota. Respondent contributed $1,000 and a mortgaged car to DLC, and also cosigned a $5,000 note with the Woodhams who were fifty per cent partners in the business. The Woodhams did not actively participate in running the business. In September, 1972, respondent borrowed $10,000 to buy out the Woodham's interest in DLC. At trial respondent testified that the loan was not paid off at the time of the marriage, and that he did not know the exact loan balance on the date of the marriage.

About the time of the marriage, DLC leased a building in Rochester. DLC purchased this building sometime in 1974. On December 31, 1974, appellant testified that approximately $8,000 of the $30,631 purchase price of the Rochester building was paid. Part of the balance due was owed to

a bank and part to the seller on a contract for deed. In 1974, DLC leased a Minneapolis building for use as the base of DLC's wholesale leather, pillow, hat, and fur cleaning business. DLC also rented fur cleaning equipment from the lessors of this building.

In 1977, to accommodate the rapidly expanding business, DLC moved from the Minneapolis building into another building it purchased on Lake Street in Minneapolis. It also purchased the fur-cleaning machines it had been renting. DLC sold the Rochester store in April, 1977.

Appellant was employed by Northwestern Bell from 1953 until 1975, at which time she quit at respondent's request. In 1975, she worked in a managerial position at Bell. Shortly after the parties' marriage, she began working part-time on nights and weekends for DLC. At some point she began working full time and continued to do so until 1978.

Appellant briefly held part-time jobs after 1978, but was forced to quit due to health problems. The trial court found appellant has glaucoma, back problems, and TMJ (a jaw condition) which place limitations on her ability to maintain gainful employment. Appellant has begun training as a chemical dependency treatment counsellor. Training will last approximately two years. An expert testified that she could earn $900 to $1,200 per month in an entry level counseling position.

Respondent's three children were employed by DLC. During the parties' marriage, respondent paid his children a total of approximately $75,000 in bonuses. He testified that these bonuses were for "services rendered" and to encourage the children to continue to work for DLC.

The parties stipulated that DLC's 1984 value was $415,431, and then by mutual agreement the parties reduced that figure by $30,000. The value of respondent's nonmarital interest in DLC was at issue during trial.

Appellant's expert testified that DLC's value, as of May 11, 1974, was $26,750. He used the analysis of Rev.Ruls. 68–09 and 59–60 in formulating his opinion. To compute DLC's value, he calculated average annual income; from this he subtracted respondent's salary, as well as income tax paid on respondent's behalf, for an average of $3,723. He computed the return on assets by multiplying the average net book value, $20,752, by an 8% return rate to yield a return on assets of $1,660. He multiplied the excess earnings, average income less return, by a capitalization factor of five for good will of $10,315. He valued DLC's assets as of December 31, 1973, at $11,478.

Respondent's expert valued DLC as of June 30, 1974, at $119,397. He testified that he relied on Rev.Rul. 59–60 in evaluating DLC. In his calculations, respondent's expert subtracted neither respondent's salary nor income tax paid to arrive at DLC's average income for 1972 and 1973; however, he did subtract them for 1974. He calculated the average income for these years at $21,389, and calculated return on assets in the same manner as did appellant's expert. He used a capitalization factor of five and the net book value as the valuation of assets.

The trial court found that DLC had a value of $100,000.00 on December 31, 1974.

The court awarded appellant $83,000 in income from a contract for deed which included a $30,000 down payment from the sale of the marital homestead, a cash settlement of $75,000 payable in four annual installments at 8% interest, and her nonmarital property of unknown value.

The court found that respondent currently earns $74,823, and that he receives additional income of an undetermined amount, which the court found, "[is] not reflected on his tax returns." The court awarded respondent the parties' home in Montevideo, with a net value of $19,319; his nonmarital DLC stock which the court valued at $214,000; DLC of Omaha stock valued at $45,000; boats and a boat slip valued at $42,000; a promissory note worth $19,046; and other stock valued at $375.

### ISSUES

1. Did the trial court err in determining respondent's non-marital interest in DLC?

2. Did the trial court err in the amount and duration of the maintenance award?

3. Did the trial court err in apportioning attorney fees?

4. Did the trial court err in failing to order respondent to provide appellant with health insurance?

### ANALYSIS

#### I.

*Date of Valuation of Non-marital Share*

Appellant challenges the trial court's valuation of DLC on three grounds: that the court should have valued DLC on May 11, 1974, the date of the parties' marriage, and not December 31, 1974; that much of the increase in DLC's value is due to expansion of the business and not to appreciation, thus the court awarded a disproportionately large share of DLC to respondent as non-marital property; and that the court's valuation of DLC was not supported by the evidence.

The trial court has broad discretion in property division and its decision will not be reversed absent a clear abuse of discretion. *Bogen v. Bogen,* 261 N.W.2d 606, 609 (Minn.1977).

Courts are required to make a just and equitable division of the marital property after making findings regarding the division of the property. Minn.Stat. § 518.58 (1984).

"Marital property" is

property, real or personal, including vested pension benefits or rights, acquired by the parties, or either of them, to a dissolution, legal separation, or annulment proceeding *at any time during the existence of the marriage relation between them.*

Minn.Stat. § 518.54, subd. 5 (1984).

Appellant's expert valued DLC, as of the date of the marriage (May 11, 1974), at

$26,723. Respondent's expert valued the business as of June 30, 1974, at $119,397. The trial court valued the business as of December 31, 1974, at $100,000.

The court reasoned that:

The Petitioner's contribution to the operation of the business between the date of marriage and the year end was minimal. She was employed full-time by Bell during this period. She did not participate in business decisions or devote a significant amount of time to the operation of the business.

The court also noted:

From May, 1974, to February, 1975 [when appellant left N.W. Bell] she worked minimally on a part-time basis for DLC. The Respondent devoted his full efforts to DLC.

In the fall of 1974, DLC opened a "branch" in Minneapolis in an effort to improve service to Twin City customers and increase the business volume. The Petitioner did not participate in this decision.

We disagree with part of the reasons used in determining respondent's non-marital portion of DLC. The court had available testimony from one expert valuing DLC as of the date of the marriage and from another expert valuing DLC six weeks after the marriage. Yet the court chose to select a date almost eight months after the marriage because appellant was not actively involved in the business at the start. This is not the test.

Property acquired during the marriage is presumed marital. Minn.Stat. § 518.54, subd. 5 (1984). Appellant's alleged minimal contributions to DLC and her lack of participation in decision making at DLC do not rebut the statutory presumption. The law recognizes the value of indirect contributions to the marital estate including, but not limited to, homemaking services. The evidence showed that appellant worked full time for Northwestern Bell and part time for DLC during the span from May 11 to December 31, 1974. This constitutes a contribution to the parties' financial position

during the period from the date of the marriage to December 31, 1974. Minn. Stat. § 518.58 (1984) states:

It shall be conclusively presumed that each spouse made a substantial contribution to the acquisition of income and property while they were living together as husband and wife.

The court erred in determining the value of respondent's non-marital share of DLC on December 31, 1974, with available testimony from one expert who valued the business as of the date of the marriage and one who valued the business as of six weeks after the marriage. Although conceivably the trial court figure of $100,000 may be in the permissible range, we remand to recalculate respondent's non-marital share using the time frame of the marriage. The evidence supports the statutory presumption that appellant made contributions to DLC during the marriage. No evidence presented at trial rebutted the presumption that the increased value of DLC during marriage was marital property.

On remand, the court should value DLC as of the date of the marriage, May 11, 1974, or as near to that date as is practicable. *Cf. Rohling v. Rohling,* 379 N.W.2d 519, 522 (Minn.1986) (retirement funds received by husband after commencement of dissolution proceeding and during separation was marital property for distribution purposes).

*Non-Marital Share of DLC*

Appellant also argues that the court's valuation of respondent's non-marital share of DLC is skewed because the court failed to take into account the fact that a significant portion of DLC's increase in value was due to expansion of DLC's property and to a dramatic increase in sales during marriage.

We cannot determine from the findings whether the court took these factors into account. It is evident from the record that a significant share of the increase in DLC's value was due to the acquisition of additional assets during the marriage and, possibly, to expansion of the business. This is one factor the court should consider on remand in determining the marital share.

The court's valuation of property should be sustained if within the limits of credible estimates made by competent witnesses. *Lammi v. Lammi,* 348 N.W.2d 372, 374 (Minn.Ct.App.1984). This court will sustain a decision if it has an acceptable basis in fact and principle. *Bollenbach v. Bollenbach,* 285 Minn. 418, 426–7, 175 N.W.2d 148, 154. The court found "the reasonable value of DLC on December 31, 1974, was $100,000." Appellant argues that this conclusion was not supported by the evidence. The court made no finding as to how it arrived at this figure.

The court failed to make findings of fact from which it can be determined on what basis it made its valuation of respondent's non-marital share of DLC. However, we draw the inference that the court capitalized respondent's compensation based on the fact that the valuation adopted by the court approximates that of respondent's expert, and respondent's expert partially capitalized respondent's compensation in his appraisal of DLC.

On remand, we note that capitalization of respondent's income is questionable under *Rogers v. Rogers,* 296 N.W.2d 849 (Minn. 1980); *Roberson v. Roberson,* 296 Minn. 476, 206 N.W.2d 347 (1973); *Lowe v. Lowe,* 372 N.W.2d 65 (Minn.Ct.App.1985). While capitalizing the compensation of an owner of a marital business penalizes the owner by giving his spouse a forced share of his future earnings, in the valuation of a non-marital business owned prior to marriage, capitalization here may penalize appellant by artificially increasing the value of respondent's non-marital share.

We hold that the court's valuation of respondent's non-marital share of DLC does not have an acceptable basis as to time frame and data and should be recalculated.

*Sufficiency of the Evidence*

Appellant also claims the court's determination of the marital portion of DLC is not supported by the evidence. The court found that of DLC's present value of $384,-456, only $64,178 was marital. The court found:

In the fall of 1974, DLC opened a "branch" in Minneapolis in an effort to improve service to Twin City customers and increase the business volume. The Petitioner did not participate in this decision.

DLC continued to operate in two locations, Rochester and Minneapolis, until July, 1976, when the operations were combined at the business' present location at 4308 E. Lake St., Minneapolis. The business has continued to prosper and gross sales amounted to nearly $600,000.00 in 1984.[1]

Appellant concedes that respondent is entitled to the pure "appreciation" in the value of his non-marital share. However, she claims that the acquisition of additional buildings and machinery during marriage is analogous to "improvements," not to "appreciation" and is, thus, marital under *Schmitz v. Schmitz*, 309 N.W.2d 748 (Minn. 1981); *Faus v. Faus*, 319 N.W.2d 408 (Minn.1982); *Pearson v. Pearson*, 363 N.W.2d 337 (Minn.Ct.App.1985).[2] We agree.

Appellate courts recognize a distinction between appreciation in value of a non-marital asset and generation of income by a non-marital asset. *See Johnson v. Johnson*, 388 N.W.2d 47 (Minn.Ct.App.1986). Pure appreciation of a non-marital asset is non-marital. *See Schmitz v. Schmitz*, 309 N.W.2d 748, 750 (Minn.1981). However, income from a non-marital asset is marital property. *See Rosenberg v. Rosenberg*, 379 N.W.2d 580 (Minn.Ct.App.1985), *pet. for rev. denied*. (Minn. February 19, 1986).

Evidence at trial showed that some of DLC's increase in value was due to expansion of the business. Moreover, we agree with appellant that the assets acquired after the marriage are marital.

On remand, when the trial court considers the factors enumerated in this opinion, it should determine how much of DLC's present value is attributable to appreciation from the non-marital portion of DLC and how much to acquisition of buildings and equipment during marriage (marital asset).

The parties have agreed on DLC's present net value. From that figure the court must make findings on the factors discussed in this opinion to determine respondent's non-marital share. The court should make a finding on the marital share by deducting the non-marital share from DLC's present net equity. Once it has found the value of the marital share, it should make "a just and equitable division of the marital property * * * after making findings regarding the division of the property" Minn.Stat. § 518.58 (1984).

Appellant also argues that the bonuses paid to respondent's children should be added back into the marital estate. She cites no authority under which this must be done. We find no fraud on appellant resulting from respondent paying his children substantial sums for their work at DLC. Nor do we find any other equitable grounds on which to add back to the marital estate the amount of the bonuses. Likewise, her challenge to the trial court's valuation of the Lake Street building belonging to DLC is without merit.

## II.

### Maintenance

■ The award of maintenance is governed by Minn.Stat. § 518.552 (1984).

1. The court further found:

   The court believes the reasonable value of DLC on December 31, 1974, was $100,000.00. Considering the rate of inflation between 1974 and 1985 to be approximately 114% as testified to by Mr. Fox, and supported by the testimony of the Respondent with respect to price increases, the value of DLC in 1985 dollars would be $214,000.00. The parties stipulated that DLC has a present value of $384,456.00. This value should be reduced by $106,288.00, the balance of the two promissory notes owed by the Respondent to DLC, which were considered assets of DLC when the present value was determined. Thus the present value of DLC, as adjusted, amounts to $278,178.00, and the Court finds that the "marital" portion amounts to $64,178.00.

2. We note respondent relies on *Nardini v. Nardini*, 385 N.W.2d 339, 343 (Minn.Ct.App.1986) *pet. for rev. granted*, (Minn. June 30, 1986). *Nardini* holds that *Schmitz* is inapplicable to determine the non-marital share of a business. We do not address that issue here.

Maintenance is proper when the spouse seeking maintenance

Lacks sufficient property including marital property apportioned to him, to provide for his reasonable needs, especially during a period of training or education.

Minn.Stat. 518.552, subd. 1(a) (1984). The trial court has broad discretion in awarding maintenance. This court must affirm the trial court if its findings have "an acceptable basis in fact and principle even though we might have reached a different disposition of the problem." *Bollenbach v. Bollenbach,* 285 Minn. 418, 426–7, 175 N.W.2d 148, 154 (1970); *Rohling v. Rohling,* 379 N.W.2d 519, 522 (Minn.1986).

The trial court found appellant was currently unemployed and found, "Due to her physical disabilities and her need for further education and training, she lacks sufficient property to provide for her reasonable needs, considering the standard of living established during the marriage." The court made no findings on appellant's monthly expenses. The court awarded maintenance as follows:

| | |
|---|---|
| August 1, 1985 to August 1, 1987 | $1,500/month |
| August 1, 1987 to August 1, 1989 | $1,000/month |
| August 1, 1989 to July 31, 1990 | $ 500/month |

Appellant argues that the maintenance award is insufficient to meet her minimum expenses, which she argues in her brief are $1,860. In addition to maintenance, appellant will continue to receive $510 per month income from the contract for deed she received in the property settlement until the contract balloons in 1992. She was also awarded four annual property settlement payments of $15,000 in 1985, and $20,000 in 1986, 1987, and 1988. Maintenance, together with the property settlement, will provide for her reasonable needs. We hold that the trial court acted within its discretion in the amount and duration of maintenance awarded.

Appellant also argues that the court erred by failing to retain jurisdiction over maintenance. A reservation of mainte-nance was not required under the statute prior to its 1985 amendment. However, a court may modify a temporary or permanent maintenance award before expiration of the award. Minn.Stat. § 518.64, subd. 1 (1984). Appellant may bring a motion to reserve maintenance at any time before the maintenance order expires. The court may, in its discretion, grant or deny the request. *Wibbens v. Wibbens,* 379 N.W.2d 225, 226–7 (Minn.Ct.App.1985).

### III.

*Attorney's Fees*

■ Trial courts have broad discretion to award attorney's fees. *Otte v. Otte,* 368 N.W.2d 293, 299 (Minn.Ct.App.1985). The court will not be reversed absent a clear abuse of discretion. *Wibbens,* 379 N.W.2d at 227.

In a proceeding brought either for dissolution or legal separation under this chapter, the court, from time to time, after considering the financial resources of both parties, may require one party to pay a reasonable amount necessary to enable the other spouse to carry on or to contest the proceeding, and to pay attorney's fees.

Minn.Stat. § 518.14 (1984). Appellant's attorney's fees totalled $30,000. The trial court ordered respondent to pay $5,000 of these fees. In light of the total financial package granted each person, we cannot say that the court erred in ordering respondent to pay one-sixth of appellant's attorney fees.

### IV.

*Health Insurance*

Appellant argues that the court erred in refusing to order respondent to provide her health insurance in light of her physical problems. Appellant did not raise or argue this position at trial, and we will not review it on appeal. *See Morton v. Board of Commissioners,* 301 Minn. 415, 427, 223 N.W.2d 764, 771 (1974).

## DECISION

The court failed to make findings on the division of property and erred by valuing respondent's non-marital share of DLC from a date seven months after the parties' marriage. The trial court properly awarded rehabilitative maintenance and attorney's fees.

Affirmed in part, reversed, and remanded.