**Barbara AARON, Respondent,**

v.

**Allen H. AARON, Appellant.**

**No. 48636.**

Supreme Court of Minnesota.

June 1, 1979.

Rehearing Denied Aug. 2, 1979.

---

James P. Rorris, Minneapolis, for appellant.

Meshbesher, Singer & Spence, Ronald I. Meshbesher, and Martin L. Swaden, Minneapolis, for respondent.

Heard before SHERAN, C. J., and YETKA and SCOTT, JJ., and considered and decided by the court en banc.

YETKA, Justice.

This is an appeal by Allen Aaron, respondent below, from a judgment and decree, as amended, for dissolution of marriage and distribution of property entered by the Hennepin County District Court. We affirm.

The parties, Allen and Barbara Aaron, were married on November 16, 1954. The petition for dissolution of the marriage was filed by Barbara Aaron on March 31, 1976. At that time, petitioner was 39 years of age and respondent (appellant herein) was 43 years of age. There were two daughters, aged 20 and 18.

After trial, the trial court found that the parties owned certain real and personal property and assigned to that property the following value or equity.

| | VALUE OR EQUITY |
|---|---|
| Homestead | $ 58,600 |
| Parklawn Apartments | 5,000 |
| East River Terrace | 111,948 |
| Oxboro Apartments | 72,215 |
| Fridley Apartments (59 percent of $37,228) | 21,965[1] |
| Homestead furnishings | 7,000 |
| Mr. Aaron's furnishings | 684 |
| Mrs. Aaron's 1972 Buick | 2,675 |
| Mr. Aaron's 1977 Pontiac | 5,809 |
| Mrs. Aaron's jewelry | 3,000 |
| Mr. Aaron's jewelry | 1,000 |
| Mrs. Aaron's savings | 1,471 |
| Mr. Aaron's savings | 12,000 |
| Accounts Receivable -- law firm (25 percent) | 2,500 |
| Mr. Aaron's vested profit sharing | 1,500 |
| LaMaur stock | 400 |
| Total | $307,767 |

1. The income from the Fridley Apartments goes into a trust fund of which the Aarons' daughters are the beneficiaries. The trust expires July 1, 1986. The 59 percent figure is Allen Aaron's remainder interest.

In its order of November 23, 1977, the trial court made the following distribution of the property:

To petitioner Barbara Aaron

| | |
|---|---:|
| Homestead | $58,600 |
| Household furnishings in the homestead | 7,000 |
| 1972 Buick | 2,675 |
| Jewelry | 3,000 |
| Savings | 1,471 |
| LaMaur stock | 400 |
| Total | $73,146 |

To respondent Allen Aaron

| | |
|---|---:|
| Parklawn Apartments | $ 5,000 |
| East River Terrace | 111,948 |
| Oxboro Apartments | 72,215 |
| Fridley Apartments | 21,965 |
| 1977 Pontiac | 5,809 |
| Jewelry | 1,000 |
| Savings account | 12,000 |
| Accounts receivable | 2,500 |
| Profit sharing plan | 1,500 |
| Household furnishings in respondent's apartment | 684 |
| Total | $234,621 |

In addition, the trial court ordered appellant to pay petitioner $70,000 in equal quarterly installments over a 7-year period, beginning January 1, 1978. Interest on the unpaid balance was to be computed and paid quarterly at 8 percent per year beginning January 1, 1979. The monetary award was made because appellant's interest in the apartment buildings could not be easily liquidated. The apartment buildings are owned by SPGA Associates, a partnership made up of appellant and his law partners, in which appellant holds a one-quarter interest.

After the trial court issued its November 23, 1977, order, appellant moved for amended findings of fact and conclusions of law or, in the alternative, for a new trial. After a hearing on this motion, the trial court amended its original order as follows:

1. A life insurance policy, with a cash value of $773, was added to petitioner's assets.

2. According to the amended order, the total value of property awarded to petitioner is $85,-

2. The equity in the homestead was increased to $69,953 (in the previous valuation, costs of sale of $11,353 had been deducted).[2]

3. The amount of the cash award was reduced to $60,000.

Appellant raises three issues on appeal:

1. Did the trial court err by not considering the potential tax liability of appellant in connection with certain properties?

2. Did the trial court err by not considering that the apartment properties would most likely be sold at a discount on a contract for deed?

3. Did the trial court err by not considering that appellant would be required to pay a sales commission out of the proceeds of any future sale?

We have explicitly recognized that the trial court has broad discretion in dividing property upon dissolution of a marriage, and we will not overturn the trial court's decision absent a showing of clear abuse of that discretion. See, e.g., *Podany v. Podany*, 267 N.W.2d 500 (Minn.1978); *Bogen v. Bogen*, 261 N.W.2d 606, 609 & n. 5 (Minn. 1977); *Peterson v. Peterson*, 308 Minn. 365, 242 N.W.2d 103 (1976).

■ 1. Appellant argues that the district court erred because, in making the property distribution, it did not consider that appellant would be required to pay substantial capital gains taxes when the apartment properties are sold. The value assigned to appellant's interest in the apartment properties equaled one-fourth of SPGA's equity in the properties. The trial court calculated SPGA's equity in each of these properties by subtracting the balance still owing on the mortgage from an appraiser's estimate of the current market value. Appellant's one-fourth interest in

2. According to the amended order, the total value of property awarded to petitioner is $85,-

272. The total value of property awarded to appellant remains the same.

the four properties was thus valued at $211,128.

Appellant claims that if the properties were to be sold at the estimated values adopted by the trial court, he would realize a capital gain of $211,761.41,[3] on which he would be required to pay taxes of approximately $84,700. Consequently, he argues, although it appears that the property is equally divided between the two parties, he has actually received a smaller share.

Generally, courts base the distribution of property on the value of the property at the time of distribution and, therefore, are willing to consider only those tax consequences that arise from the distribution itself. Because they are hesitant to speculate about the future value of the property, they are also hesitant to consider the possible tax consequences of either party's future dealings with the property. See, e. g., *In re Marriage of Goldstein*, 120 Ariz. 23, 583 P.2d 1343 (1978); *Burkhart v. Burkhart*, 349 N.E.2d 707 (Ind.App.1976). For example, a California district court had valued the husband's interest in his law partnership on the basis of his contractual right to withdraw from the firm. In arriving at that value, the district court considered the tax consequences he might incur if he withdrew at some future time and reduced the value accordingly. The California Supreme Court reversed, finding that, once having divided the property—

> " * * * the court is not required to speculate about what either or both of the spouses may possibly do with his or her equal share and therefore to engraft on the division further adjustments reflecting situations based on theory rather than fact." *In re Marriage of Fonstein*, 17 Cal.3d 738, 749, 131 Cal.Rptr. 873, 879, 552 P.2d 1169, 1175 (1976).

In arriving at this conclusion the California court relied on an earlier case, *Weinberg v.*

*Weinberg*, 67 Cal.2d 557, 63 Cal.Rptr. 13, 432 P.2d 709 (1967), where it had upheld a monetary award to the wife of one-half of the community interest in the husband's wholly owned corporations, in lieu of a division of the stock. There, the court had found that although there would be tax consequences to the husband if he sold the stock to satisfy the award, there was no indication that he would be required or intended to sell the stock for that purpose. Thus the court need not "speculate" about the possible tax consequences. 67 Cal.2d 566, 63 Cal.Rptr. 18, 432 P.2d 714.

Although we have not previously adopted the position taken by these other courts, we agree with the reasoning underlying that position. Further, we have indicated that it is within the trial court's discretion to consider the tax consequences of its award, but such considerations are not controlling. *Johnson v. Johnson*, 277 N.W.2d 208 (Minn. 1979). We hold that, given the evidence presented in the instant case, the trial court's refusal to consider the potential tax consequences of a future sale was not an abuse of discretion. Appellant has not shown that he must sell his interest in the apartment properties in order to satisfy the $60,000 monetary award or that he intends to sell that interest. On the contrary, his testimony at trial was that the properties were intended to be a long-term investment and would most likely not be sold until fully depreciated. In addition, appellant testified that his share of the income from the properties (after depreciation) was about $10,000 per year. Given this figure, both the amount of and the payment schedule for the monetary award are reasonable.[4]

We do not hold that in a proper case, where sale of real estate is required or is likely to occur within a short time after the dissolution, that the court should not consider tax consequences—indeed it should.

---

3. This estimate includes only three of the four apartment properties. It does not include the Parklawn Apartments.

4. Appellant's average pretax annual income from his law practice is $70,000.

But this is not such a case. In the light of the evidence, the district court's decision not to consider potential tax consequences was not an abuse of discretion.

2. Appellant argues that the trial court's refusal to consider the discounting of market value resulting when property is sold using a contract for deed was an abuse of discretion. Absent a showing that this property will be sold in the immediate future, the trial court did not abuse its discretion by not considering this factor.

3. Appellant contends that the trial court erred by refusing to consider the sales commission he will be required to pay a real estate broker when the apartment properties are sold. Again, absent a showing of imminent sale, this factor need not be considered. In addition, the trial court amended its valuation of the homestead property so that it was not reduced by a sales commission.

The district court's order, as amended, for distribution of property is affirmed.

OTIS, J., took no part in the consideration or decision of this case.