Karen Deborah **HEDELIUS**, Appellant,

v.

James E. **HEDELIUS**, Respondent.

No. C2-84-963.

Court of Appeals of Minnesota.

Jan. 29, 1985.

Joanne T. Swanson, St. Paul, for appellant.

William E. MacGregor, Jr., Minneapolis, for respondent.

Heard, considered, and decided by LESLIE, P.J., and WOZNIAK and LANSING, JJ.

## OPINION

WOZNIAK, Judge.

Karen Hedelius appeals from an amended judgment and decree in a dissolution of marriage. She contends that the trial court abused its discretion in deviating from the child support payment guidelines contained in Minn.Stat. § 518.551, subd. 5 (Supp.1983). In addition, she contends that the trial court abused its discretion in re-

fusing to consider the consequences on the marital estate of income tax filings for the taxable year 1981, and in division of the marital estate. We affirm.

## FACTS

Karen and James Hedelius were married on April 6, 1969. Two children, ages 9 and 10 at the time of the dissolution, were born of the marriage. The parties separated in 1981; the amended dissolution decree was entered May 7, 1984. Karen was 36 years old at the time of trial; James 48.

Karen is employed by Control Data Corporation, grossing $46,248 yearly. In addition, she receives $4800 each year from renters in the homestead, and $7200 as an independent computer consultant, for a total income of $58,248. James is employed by Space Center, Minnesota, with a yearly income of $22,800.

The dissolution decree granted custody to Karen and ordered James to pay $200 per month child support until he paid off his debt to the IRS. Thereafter, he would pay $300 per month. Child support guidelines would have required him to pay $368.83 per month based upon his net monthly income.

The debt to the IRS is a consequence of James' 1981 tax returns. Karen had prepared the couple's income tax returns that year, filing individually because they had separated. She claimed 100% of the deductions, causing her to be refunded $2,741 and James to owe $4,972.

He amended his returns, demanding a share of the deductions. The IRS audited both parties.

Karen then gave James the tax refund check, which he applied towards his debt. Because he was unable to meet the entire debt, both a federal and a state tax lien were filed against the parties' homestead.

Karen tried to get James to amend his returns to filing jointly, rather than separately, claiming $3,500 could be saved. He refused. She attempted to introduce an exhibit at trial showing the possible savings to the marital estate had the parties filed jointly rather than separately in 1981. The court refused to admit this exhibit on the grounds that it was too speculative.

From the time of separation, Karen had made all of the payments on the homestead: substantial contract for deed balloon payments which required refinancing, as well as all the principal, interest, taxes, and insurance payments on the property. She paid off the federal tax lien, but could not come up with the money for the state tax lien. The contract for deed was cancelled, but other arrangements were made. Karen was subsequently able to repurchase the homestead in her name alone, without loss.

The homestead in Edina, valued at approximately $178,000, is the third home the parties have lived in as a married couple. Karen used nonmarital funds for 14.5% of the purchase price of the first homestead. The proceeds from the sale of the first homestead went to the purchase of the second in New Brighton. At the time of separation, the parties were receiving payments as the vendors of a contract for deed on the second homestead.

The two significant assets in terms of marital property distribution are the Edina homestead and the contract for deed on the former homestead in New Brighton. Karen was awarded the Edina homestead, subject to a $10,000 lien in favor of James. The contract for deed was divided equally between the parties.

## ISSUES

1. Did the trial court abuse its discretion in deviating from the child support payment guidelines set forth in Minn.Stat. § 518.551, subd. 5 (Supp.1983)?

2. Did the trial court abuse its discretion in refusing to consider the consequences on the marital estate of income tax filings for the taxable year 1981?

3. Did the trial court abuse its discretion in its division of the marital property?

## ANALYSIS

The standard of review for property settlements and child support obliga-

tions is narrow. The trial court has broad discretion and will be reversed only for a clear abuse of discretion. *Bogen v. Bogen*, 261 N.W.2d 606 (Minn.1977). If the trial court's determination of appropriate property division and obligations of child support has reasonable and acceptable basis in fact and principle, the reviewing court must affirm. *Dubois v. Dubois*, 335 N.W.2d 503 (Minn.1983).

1. A court may order child support in an amount below the guidelines if the court "makes express findings of fact as to the reason for the lower order." Minn.Stat. § 518.17, subd. 5 (Supp.1983). Factors which might appropriately be considered in determining such an award include the financial resources and needs of the child and both parents, the standard of living the child would have enjoyed had the marriage not been dissolved, and the physical, emotional, and educational needs of the child. Minn.Stat. § 518.17, subd. 4 (1982).

The trial court set child support at $200 per month for as long as James was indebted to the IRS, and $300 thereafter. Both figures are below the $368.83 mandated by the guidelines.

The trial court's findings reveal that it based its deviation, in part, on the fact that Karen's income was 2.5 times that of James' income, and that James was indebted to the IRS.

■ Karen argues that the trial court erred in basing its deviation in any part upon debt repayment, relying on *Bakke v. Bakke*, 351 N.W.2d 387 (Minn.Ct.App.1984). Although the *Bakke* case makes clear that private debt repayment cannot justify a downward deviation from the child support guidelines, we hold that the same is not true for public debt repayment. James' debt to the IRS is one which must be paid off, one he did not incur by living extravagantly; indeed, it is a debt which, at least to some extent, Karen helped to incur. The extent to which the downward deviation is based upon public debt repayment is justified.

■ Karen not only has a significantly more substantial monthly income than James, but seems to be in a better position to increase that income in the future as well. The trial court's deviation after the debt to the IRS is paid is minor—$68.83 each month. Such a deviation, based on the relevant Minn.Stat. § 518.17, subd. 4 (1982) factors, was within the bounds of the court's discretion in light of *Kowalzek v. Kowalzek*, 360 N.W.2d 423 (Minn.Ct.App. 1985).

Finally, although the court's findings are not as detailed as they might have been, we hold that they nonetheless satisfy the requirement of Minn.Stat. § 518.17, subd. 5 (Supp.1983), and support the lower award.

2. Karen claims that because James refused to amend his 1981 tax returns and file jointly, he caused a dissipation of the marital assets to the extent of $3,500. She claims that the property award to James should be offset by this amount in order to compensate her for the loss he caused.

The trial court refused to consider the tax consequences of filing jointly in 1981 rather than separately, ruling that such consequences were too speculative. A review of the record confirms the speculative nature of the evidence offered.

■ A trial court need not consider tax consequences in dissolution matters where the court is required to speculate on such matters. *Aaron v. Aaron*, 281 N.W.2d 150 (Minn.1979).

■ In light of the *Aaron* rule and the broad discretion given to the trial court in making property divisions, we hold that the court did not err in refusing to consider the tax consequences of the 1981 filing. Additionally, we note that it was Karen who made the mistake in electing the method for filing in 1981—a unilateral mistake. Simply because they would have been better off had they filed jointly rather than separately for the 1981 year does not justify reversal.

3. Property disposition in a dissolution action provides a difficult area to challenge the trial court since "substantial deference

must be given the court's findings because exactitude is not possible." *Gulbranson v. Gulbranson,* 343 N.W.2d 715 (Minn.Ct. App.1984).

██ The two major marital assets are the Edina homestead and the contract for deed on the New Brighton homestead. The trial court awarded the Edina homestead to Karen, subject to a $10,000 lien in favor of James; the contract for deed was divided 50/50.

Karen claims that she incurred a significant debt incident to salvaging the Edina homestead, and that the trial court did not consider the amounts she expended for debt reduction, as well as her remaining liability, when making the property division.

An examination of the dissolution decree fails to support this contention. The court made findings detailing the extent to which Karen contributed to the acquisition and the salvaging of the homestead:

> The parties' present homestead located at 6313 Hillside Road, Edina, Minnesota 55436 was originally purchased in August of 1980 for the sum of $160,000 and has a present market value of approximately $178,500 subject to a mortgage with the Eberhardt Company in the approximate amount of $108,000 as well as a loan from Commercial Credit in the approximate amount of $8,500 which loan was taken out by the Petitioner to refinance the balance still owing as of January, 1983 on the swing loan used to make the down payment on the subject homestead. From the time of the parties' separation in October, 1981, the Petitioner, at great expense of time and effort, made all payments on said homestead without contribution from the Respondent. Said payments included substantial contract for deed balloon payments which required refinancing as well as all the principal, interest, taxes and insurance payments on the property. Further, child support was reserved at the temporary hearing held on January 29, 1982 and April 14, 1982, and the Respondent has only contributed $800 toward

the support of the parties' minor children since the parties' separation resulting in the Petitioner having to provide the sole support of said children. For the aforementioned reasons, as well as the Petitioner's contribution of non-marital funds to the purchase of the parties' first homestead as detailed in Finding XI, it is fair and equitable that the Petitioner be awarded a greater share of said homestead.

Considering the court's detailed and reasoned findings, it is clear that the court did not abuse its discretion in awarding Karen 84% of the homestead equity and 50% of the contract for deed equity.

## DECISION

The trial court did not abuse its discretion in deviating downward from the support guidelines, based in part upon the custodial parent's significantly greater income and the non-custodial parent's indebtedness to the IRS.

A refusal to consider the tax consequences on the marital estate of filing separately rather than jointly in 1981 was not an abuse of discretion.

The trial court did not abuse its discretion in awarding husband 16% of the homestead equity and 50% of the equity of the contract for deed.

Affirmed.