STATE OF MINNESOTA

IN SUPREME COURT

A14-1841

Court of Appeals                                                                                          Stras, J.
                                                                  Took no part, Chutich, McKeig, JJ.

In re the Marriage of:

Christine J. Curtis,

                    Appellant,

vs.                                                                       Filed:  November 16, 2016
                                                                           Office of Appellate Courts

Gregory M. Curtis,

                    Respondent.

_____

Andrew M. Tatge, Matthew C. Berger, Gislason & Hunter LLP, New Ulm, Minnesota, for appellant.

Roger H. Hippert, Nierengarten & Hippert, Ltd., New Ulm, Minnesota, for respondent.

David L. Olson, Edina, Minnesota;

Michael D. Dittberner, Linder, Dittberner & Bryant, Ltd., Edina, Minnesota; and

Mary Catherine Lauhead, Law Offices of Mary Catherine Lauhead, Saint Paul, Minnesota, for amici curiae Committee of the Minnesota Chapter of the American Academy of Matrimonial Lawyers and Committee of the Family Law Section, Minnesota State Bar Association.

_____

SYLLABUS

1.      In determining whether a spouse needs maintenance in a marital-dissolution action, a district court has discretion to consider the income-earning potential of converting liquid assets, including investments, into a different form.

2.      When spouses in a marital-dissolution action stipulate to an equitable division of property, and the district court considers the income-earning potential of converting liquid assets into a different form in deciding whether to award maintenance, the district court must take into account any tax consequences from the conversion.

Reversed and remanded.

OPINION

STRAS, Justice.

This appeal from a marital-dissolution action requires us to determine when, and under what circumstances, a district court may consider the income-earning potential of investment assets equitably distributed to a spouse in deciding whether to award maintenance. The district court declined to award maintenance to Christine Curtis, who sought maintenance from Gregory Curtis, reasoning that she could reallocate the investment assets equitably distributed to her in the property settlement to produce sufficient income to meet her reasonable monthly needs. A divided panel of the court of appeals affirmed. We reverse the decision of the court of appeals and remand to the district court for further proceedings consistent with this opinion.

2

I.

Christine and Gregory Curtis married in 1990. During their marriage, Gregory worked as a dentist, and he continues to operate his own dental practice today. Once the parties' first child was born, 5 years into the marriage, Christine stopping working outside the home. The parties have two children, now 17 and 21 years of age.

In October 2012, after approximately 22 years married to Gregory, Christine filed a petition to dissolve the marriage. In the course of the dissolution proceedings, Christine and Gregory stipulated to a custody arrangement for the children and to an equitable division of the marital property. Under the stipulation, Christine received the marital home in Sleepy Eye, an Ameritrade investment account worth roughly $2,038,000, a certificate of deposit with an approximate value of $171,000, and various other assets. The stipulation awarded Gregory, among other assets, a second home in Sleepy Eye, a lake home, a vacation property in South Carolina, and a commercial building. Based on the estimates of the parties, the district court found that Christine received roughly 57 percent of the value of the marital property available for distribution, worth a total of about $2,800,000, and Gregory received approximately 43 percent, valued at around $2,170,000. The court approved the stipulation and entered partial final judgment dissolving the marriage.

The parties' stipulation did not address Christine's request for spousal maintenance, which remained unresolved after the district court entered partial final judgment. The court conducted a trial on the spousal-maintenance issue to determine whether Christine's income was sufficient to cover her reasonable monthly needs. At trial, Gregory stipulated that he could pay spousal maintenance in any amount ordered by the court and Christine

3

presented evidence regarding her monthly income and expenses. Based on the evidence, the court determined that Christine's reasonable monthly expenses were $7,761.81. Nevertheless, the court did not award spousal maintenance to Christine, reasoning that she could exchange her assets in the Ameritrade account and the funds in the certificate of deposit for higher-yield investments that would produce income in excess of her reasonable monthly expenses. The court did not expressly consider the tax consequences of its suggested reallocation of Christine's assets.

The court of appeals affirmed in an unpublished, 2-1 decision. *Curtis v. Curtis*, No. A14-1841, 2015 WL 3823156 (Minn. App. June 22, 2015). We granted Christine's petition for review to determine whether the district court abused its discretion when it denied maintenance to Christine, due to the income-earning potential of the assets awarded to her in the property settlement, without considering the tax consequences of requiring her to reallocate her assets.[1]

II.

Spousal maintenance is "an award made in a dissolution or legal separation proceeding of payments from the future income or earnings of one spouse for the support and maintenance of the other." Minn. Stat. § 518.003, subd. 3a (2014). Minnesota law

---

[1]     Christine urges us to conclude that the district court erred when it failed to retain continuing jurisdiction over the spousal-maintenance issue. Because she presented this argument for the first time in her brief to this court and failed to raise it in her petition for review, the issue is not properly before us. *See State v. Koppi*, 798 N.W.2d 358, 366 (Minn. 2011) (stating that we generally will not address issues that were not raised in a party's petition for review).

4

provides that a district court may grant maintenance to a spouse who demonstrates that he or she:

> (a) lacks sufficient property, including marital property apportioned to the spouse, to provide for reasonable needs of the spouse considering the standard of living established during the marriage, especially, but not limited to, a period of training or education, or
>
> (b) is unable to provide adequate self-support, after considering the standard of living established during the marriage and all relevant circumstances, through appropriate employment, or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home.

Minn. Stat. § 518.552, subd. 1 (2014). Under the statute, an award of maintenance "depends on a showing of need" but even an unemployable spouse "is not by that fact alone necessarily entitled to maintenance." *Lyon v. Lyon*, 439 N.W.2d 18, 22 (Minn. 1989). Once a spouse has made a sufficient showing of need, only then will a court consider the amount and duration of a maintenance award by weighing the factors enumerated in Minn. Stat. § 518.552, subd. 2 (2014). *See Dobrin v. Dobrin*, 569 N.W.2d 199, 201 (Minn. 1997); *see also* Minn. Stat. § 518.552, subd. 2 (listing the factors that courts must consider in determining the amount and duration of a maintenance award).

Given the fact-dependent nature of the inquiry, we have said that a "trial court has broad discretion in deciding whether to award maintenance and before an appellate court determines that there has been a clear abuse of that discretion, it must determine that there must be a clearly erroneous conclusion that is against logic and the facts on record." *Dobrin*, 569 N.W.2d at 202. In this case, the district court found that Christine had sufficient assets, including the Ameritrade investment account and the funds invested in a certificate of deposit, to provide for her reasonable needs. Although Christine's assets were

5

producing less than $3,000 of income per month in their existing, growth-oriented profile, the district court relied on evidence that she could reinvest in income-producing investments that would generate an annual return of 7 percent, or $9,500 in monthly income. This expected return, the district court found, was more than sufficient to cover Christine's reasonable monthly expenses of $7,767.81.

Christine argues, and the evidence before the district court confirms, that converting the portfolio from growth-oriented to income-oriented investments would require her to sell the investments in her Ameritrade account and incur significant tax consequences. She argues that, by requiring her to convert her assets, the district court inappropriately required her to "invade the principal" of her investment accounts and deprived her of the benefits of the equitable division of the marital property. The district court viewed the matter differently, explaining that the proposed strategy does not require Christine to invade the principal of her investment assets, but rather constitutes "a reallocation that takes into account the changed circumstances of the investor."

In assessing spousal need for an award of maintenance, we have long recognized that a district court must consider all income of the requesting spouse, including income generated from marital property received in the dissolution. On several occasions, in fact, we have analyzed awards of spousal maintenance that were based on the assumption that one spouse would cover his or her reasonable monthly expenses by investing the liquid assets received in the distribution of marital property. For example, in *Broms v. Broms*, 353 N.W.2d 135 (Minn. 1984), we considered whether a district court abused its discretion in awarding spousal maintenance. In affirming the monthly maintenance award, we relied

6

on the court's finding that the spouse's "$71,000 cash settlement . . . could be invested to provide an annual income of $5,600." *Id.* at 137. Importantly, we evaluated the sufficiency of the maintenance award in light of the expected income created by investing the cash settlement in an interest-bearing account. *Id.* at 138.

Likewise, in *Nardini v. Nardini*, 414 N.W.2d 184 (Minn. 1987), we assessed the sufficiency of a limited maintenance award based on the expected return from investing a cash settlement in income-producing assets. In fact, we concluded in *Nardini* that the district court's maintenance award was too low precisely because it was "most unlikely that [the spouse could] realize an annual income from investments and employment that approaches the $100,000 mark, no matter how skillfully she invest[ed] her share of the marital assets and no matter how hard she labor[ed]." *Id.* at 198. *Nardini*, like *Broms*, recognizes that a district court is not required to ignore the income-producing potential of a cash settlement, even if it is part of an equitable distribution of the marital property. Rather, a court is entitled to determine, based on the evidence presented by the parties, that a spouse can invest the money to produce sufficient income to meet the spouse's reasonable needs, as the spousal-maintenance statute itself contemplates. *See* Minn. Stat. § 518.552, subd. 1(a) (requiring the court to assess whether the spouse seeking maintenance "lacks sufficient property, *including marital property apportioned to the spouse*, to provide for reasonable needs of the spouse" (emphasis added)).

Both *Broms* and *Nardini*, however, involved cash, which is the most liquid of assets. For other assets, such as stocks, bonds, and mutual funds—each of which can be readily converted to cash if a market for the security exists—we have also required district courts

7

to consider the income produced by the securities in determining whether one of the spouses has a need for maintenance. In *Lyon*, for example, after the parties sold their home, one of the spouses, with her half of the sale proceeds, purchased another home "free and clear" before the district court considered her maintenance request. 439 N.W.2d at 21. In considering whether the spouse had sufficient income to meet her reasonable needs, we observed that

> [f]rom her share of stocks, bonds, mutual funds, and obligations owed her, the wife will have an income of approximately $185,000. In addition, the wife has received a profit-sharing account and IRA's totaling $405,693 which, if she chooses, will be available to her[;] . . . at 8-percent interest, this sum would return about $32,000 a year. It appears, then, that the wife's $3.6 million estate, less nonliquid assets, will produce conservatively over $200,000 a year income. Even allowing for income taxes, the wife's net income will comfortably exceed her living expenses of $78,000 a year.

*Id.* at 21-22 (footnotes omitted). On these facts, we reversed the district court's award of maintenance, concluding that there was no need for maintenance in light of the requesting spouse's expected income, which exceeded the amount necessary to meet her reasonable needs. *Id.* at 22-23.

As Christine observes, however, nothing in *Lyon* required either of the spouses to reallocate the assets they had received in the property settlement, which Christine would need to do here to generate a sufficient amount of income to meet her reasonable needs. She accordingly draws a distinction between cash awards, like those involved in *Broms* and *Nardini*, and investment assets, which she says a district court must treat as untouchable when considering whether to award maintenance. She therefore urges us to adopt a bright-line rule that a district court can never consider the income-earning potential

8

of already-invested assets, regardless of whether the investments are reasonable in light of the circumstances of the parties. We decline to adopt Christine's bright-line rule.

Our cases suggest that a district court cannot require a maintenance-seeking spouse "to invade the principal of the property [awarded to a spouse seeking maintenance] to pay living expenses." *Lee v. Lee*, 775 N.W.2d 631, 640 n.10 (Minn. 2009). In *Lyon*, for example, we said that, "[t]o the extent [an ambiguous district-court finding] might be construed as determining that the wife would have to invade her estate, it is clearly erroneous." 439 N.W.2d at 22 n.2. This statement suggests that it would have been erroneous to require the spouse to diminish the principal value of her share of the marital estate to provide sufficient income to meet her reasonable needs. And given its disposition, *Lyon* also implies that requiring a maintenance-seeking spouse to diminish the principal value of his or her estate is categorically different from assuming that a spouse will reasonably invest assets to produce income. We reiterate the general rule from these cases that a court cannot require the maintenance-seeking spouse to sell off assets to provide for the spouse's "reasonable needs" or "to provide adequate self-support." Minn. Stat. § 518.552, subd. 1(a)-(b).

But just because a court may not require one of the spouses to diminish the value of the property received in the distribution to cover monthly expenses does not mean that a district court must also assume that the distributed property will forever remain in the same form. *Broms* and *Nardini*, for example, recognize that a court should not assume that one spouse would keep the cash from a division of marital property under the proverbial mattress, thereby depriving it of all of its income-producing potential and requiring a court

9

to make an unrealistic assumption about the most likely uses of the cash. Christine's bright-line rule is also inconsistent with a district court's broad discretion, which allows it to determine what needs are reasonable, what amount of self-support is adequate, and what income the assets can provide. *Lee*, 775 N.W.2d at 637. As we have noted, "each marital dissolution proceeding is unique and centers upon the individualized facts and circumstances of the parties." *Dobrin*, 569 N.W.2d at 201.

Of course, discretion has its limits, and our cases outline several principles to guide the exercise of the district court's discretion. One important factor is the nature of the asset, and in particular, its liquidity. Although we have drawn a distinction between "nonliquid" and other assets, *see Lyon*, 439 N.W.2d at 22, assets fall along a continuum of liquidity. At the most liquid extreme is cash, which we expect a maintenance-seeking spouse to invest in an effort to meet the spouse's reasonable needs. *See Nardini*, 414 N.W.2d at 198; *Broms*, 353 N.W.2d at 137; *Erlandson v. Erlandson*, 318 N.W.2d 36, 38 (Minn. 1982). At the other end of the continuum is residential real property, which a district court should rarely, if ever, expect a spouse to sell to meet day-to-day needs. *See Lyon*, 439 N.W.2d at 21-22 (contrasting "stocks, bonds, mutual funds, and obligations," as well as "a profit-sharing account and IRA's," with "nonliquid assets" such as a spouse's home). A requirement that a maintenance-seeking spouse liquidate a residence in order to meet reasonable expenses is likely to involve not only a loss of the value of the asset, but also an alteration of the spouse's lifestyle. Furthermore, the sale of such an asset is likely to trade long-term stability for short-term liquidity.

10

The assets in question in this case—the investments in Christine's Ameritrade account and the funds in the certificate of deposit—fall somewhere on the liquidity continuum between cash and residential property: they are more liquid than real or tangible personal property, but not as liquid as cash. Based on the evidence presented, the district court found that these assets "can be shifted to different investments that will provide a higher yield and less growth." Christine did not present any evidence about the market for these assets or the expected returns from reinvesting them in light of the bright-line rule she proposes. Therefore, she has not presented us with any reason to doubt the district court's finding, much less conclude that it was clearly erroneous.

Other factors for the district court to consider are the spouse's age and how the asset was invested during the marriage. For younger people, it may not make sense to convert a growth-oriented investment account into one targeting the production of income, but the opposite may be true for those approaching retirement. *See* Lawrence J. Gitman, et al., *Fundamentals of Investing* 14 (3d ed. 2011). In assessing the wisdom of pursuing one strategy over another, district courts must be mindful of the "individualized facts and circumstances of the parties." *Dobrin*, 569 N.W.2d at 201. Here, the district court took those individual facts and circumstances into account when it stated that

> it is clear that [Gregory] was focused on growth in the Ameritrade account to create a "nest egg" that could be drawn on in future years. Those future years have arrived now. The low-yield, high-growth strategy employed during the phase of building the nest egg is not appropriate when the time comes for the nest egg to produce income.

Thus, the court found that the reallocation was appropriate to "take[] into account the changed circumstances of the investor." The district court appropriately exercised its

11

discretion when it considered Christine's individual circumstances and denied maintenance based on the fact that she could convert her investment assets into income-producing investments.[2]

Finally, the district court must consider the tax consequences, if any, of requiring the maintenance-seeking spouse to reallocate assets to create income. In this case, the court of appeals suggested that the district court did not have to account for the tax consequences of the reallocation, citing our decision in *Maurer v. Maurer*, 623 N.W.2d 604, 608 (Minn. 2001). *Curtis*, 2015 WL 3823156, at *2 n.1. In *Maurer*, we considered whether a district court abused its discretion in considering the tax consequences of its distribution of marital property that included retirement and deferred-compensation accounts. 623 N.W.2d at 606. In concluding that it did not, we said that it "was within the trial court's discretion to consider the tax consequences of its award." *Id.* at 607 (citing *Aaron v. Aaron*, 281 N.W.2d 150, 153 (Minn. 1979)).

---

[2]    The dissenting judge in the court of appeals suggested that the district court's conclusion allowed Gregory to "continue to focus on preserving and growing the assets that he was awarded in the dissolution judgment while also solely benefiting from his significant earning capacity that he developed during the marriage." *Curtis*, 2015 WL 3823156, at *5 (Kirk, J., dissenting). Meanwhile, in the dissent's view, Christine was unfairly required to bear the burden of converting growth assets to income-producing assets. *See id.* Yet according to the spousal-maintenance statute, Gregory's assets and earnings are not relevant to determining whether Christine has a need for spousal maintenance, which is the first step for the court when considering a request for maintenance. *See* Minn. Stat. § 518.552, subd. 1 (setting out the factors for determining the need for spousal maintenance). It is only at the next step, after the court has determined that a need for maintenance exists, that the court considers the assets and earnings of the spouse from whom maintenance is sought. *Dobrin*, 569 N.W.2d at 201 (noting that the factors set out in Minn. Stat. § 518.552, subd. 2, are to be considered "[w]hen the trial court has determined that it is appropriate to award maintenance").

For two reasons, a district court is not free under *Maurer* to ignore the tax consequences of a decision that effectively requires one of the spouses to reallocate his or her assets. First, *Maurer* dealt with the equitable distribution of marital property itself, not the necessity of a maintenance award, and we made the statement in the context of the possibility that the effective tax rates could change by the time the parties liquidated their accounts at retirement. These same concerns are simply not present here.

Second, the case we cited for this proposition, *Aaron*, itself cautioned that "[w]e do not hold that in a proper case, where sale of real estate is required or is likely to occur within a short time after the dissolution, that the court should not consider tax consequences[;] indeed it should." 281 N.W.2d at 153. The district court decided not to award maintenance in this case due to the income-earning potential of reinvesting Christine's assets, a transaction that would indisputably have tax consequences for Christine. Under these circumstances, the district court's failure to consider the tax consequences of the transaction that the court itself urged Christine to make calls into question the court's decision, given that the transaction creating the tax consequences is "required or is likely to occur." *Id.* at 153.

The district court, even after discussing the tax consequences of the reallocation of Christine's investment assets, did not adequately account for them. Indeed, although the court specifically found that the reallocation would require Christine to pay capital-gains taxes, the court made no explicit finding regarding the amount of taxes that Christine would be required to pay. The only evidence in this case was presented by Gregory, who estimated that the capital-gains taxes on an exchange of the assets in the Ameritrade

13

account would amount to approximately $155,000, equal to about 5.5 percent of the total value of the assets distributed to Christine. Even under Gregory's view, the payment of taxes would require Christine to invade the principal of the assets she received in the distribution, which is something we have said that a court considering a maintenance request may not order. *Lee*, 775 N.W.2d at 640 n.10. Applying *Aaron* to the facts of this case, therefore, we hold that the district court was required to consider the tax consequences of requiring Christine to reallocate her investment assets.

In denying Christine's motion to amend its findings of fact, conclusions of law, and order, the district court explained that "the reallocation of investments by [Christine] would not result in an unfair and inequitable distribution of marital property." In our view, this statement answers the wrong question. By the time the court considered Christine's motion, the parties had already stipulated to an equitable division of the marital property, and the court had entered partial final judgment accepting the stipulation. The stipulation awarded Christine the certificate of deposit and the Ameritrade account, among other assets. Once "a judgment and decree is entered based upon a stipulation . . . the stipulation is merged into the judgment and decree and the stipulation cannot thereafter be the target of attack by a party seeking relief from the judgment and decree." *Shirk v. Shirk*, 561 N.W.2d 519, 522 (Minn. 1997). The district court's order nevertheless upset the stipulated judgment, effectively requiring Christine to sell some of her assets and costing her 5.5 percent of the overall value of the stipulated equitable division of marital property right from the start. There is nothing in the stipulation to suggest that the parties contemplated

14

that their property division could be disturbed by a requirement that Christine immediately liquidate a portion of the assets she received to pay capital-gains taxes.

Considering all of these factors, we conclude that the district court did not abuse its discretion in taking into account the income-earning potential of the assets that Christine received in the equitable distribution of marital property. But under the circumstances of this case, the district court's obligation to consider the tax consequences of the reallocation requires remand. If on remand the court concludes that a reallocation of Christine's assets is still justified, it must account for those consequences without requiring Christine to pay capital-gains taxes from the principal of her assets. The district court may also reconsider its decision not to award maintenance to Christine, if it ultimately concludes that the proposed reallocation no longer makes sense. Either way, we leave it to the district court on remand to fashion an appropriate order that does not require Christine to invade the principal of the assets she received in the stipulated distribution of marital property.

### III.

For the foregoing reasons, we reverse the decision of the court of appeals and remand the case to the district court for further proceedings consistent with this opinion.

Reversed and remanded.

CHUTICH, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.

MCKEIG, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.

15